# Pittsley, Appellant, *v.* King.

206   193
137SC ²380

206   193
c39SC¹644

*Contracts—Parties—Joint obligation—Corporation.*

Wherever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of joinder are not necessary for this purpose ; but, on the other hand, there should be words of severance, in order to produce a several responsibility or a several right. Whether the liability incurred is joint, or several, or such that it is either joint or several at the election of the other contracting party depends (the rule above stated being kept in view) upon the terms of the contract, if they are express.

Whether the liability of covenantors is joint, or several, or both, depends exclusively upon the words of the covenant. The language of severalty or joinder is the test. The covenant is always joint unless declared to be otherwise.

Where the plaintiff by an instrument in writing agrees to build, equip and complete for 186 defendants, "a milk condensory plant," for the agreed price of $42,000, and the price so agreed upon is to be paid by the defendants who are also to furnish the land on which the plant is to be built, the contract is a joint obligation of defendants, and it is immaterial that in the same paper the defendants agreed to become incorporated for the purpose of conducting the milk condensory, where it appears that the total subscription to the stock of such corporation in the paper was less than the contract price of the condensory and that thirty-six of the defendants subscribed to no stock at all but merely set opposite their names the number of cows whose milk would be furnished by them to the condensory.

Argued Feb. 23, 1903. Appeal, No. 259, Jan. T., 1902, by plaintiffs, from judgment of C. P. Lackawanna Co., Nov. T., 1901, No. 669, on demurrer to statement in case of Henry E. Pittsley, trading as Sayre Lumber Company, to use of J. Hibbs Buckman and O. L. Haverly, Trustees, v. F. M. Young, E. K. Atherton et al. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit on a contract to furnish and equip a milk condensory. Before EDWARDS, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in sustaining demurrer to statement.

*J. Hibbs Buckman,* of *Hopple & Buckman* and *Michael J. Mar-*

tin, of *O'Brien & Martin*, for appellant.—A contract which imposes its obligation in its entirety upon two or more persons on the one hand or confers the right upon two or more on the other hand is a joint contract: Noyes v. Barnard, 15 U. S. App. 527; New Haven & Northampton Co. v. Hayden, 119 Mass. 361; Rider Life Raft Co. v. Roach, 97 N. Y. 378.

It is not within the province of the court to place upon the contract a construction at variance with the plainly expressed intention of the parties whether the contract be reasonable or not: Pottsville Mutual Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137; Singerly v. Thayer, 108 Pa. 291.

*Everett Warren*, of *Willard, Warren & Knapp*, for appellees. —The contract was several: Riddle v. Stevens, 2 S. & R. 537; Price v. Grand Rapids & Ind. R. R. Co., 18 Ind. 137; Davis v. Shafer, 50 Fed. Repr. 764; Davis v. Belford, 70 Mich. 120 (37 N. W. Repr. 919); Davis & Rankin Bldg., etc., Co. v. Barber, 51 Fed. Repr. 148; Davis v. Booth, 10 Ind. App. 364; Davis v. McKinney, 11 Ind. App. 696; Frost v. Williams, 2 South Dak. 457; Gibbons v. Bente, 51 Minn. 499; Gibbons v. Grinsel, 79 Wis. 365 (48 N. W. Repr. 255); Davis, etc., Mfg. Co. v. Cupp, 89 Wis. 673; Davis, etc., Co. v. Murray, 60 N. W. Repr. 437; Davis v. Ravenna, 67 N. W. Repr. 436.

OPINION BY MR. JUSTICE BROWN, May 18, 1903:

On March 31, 1900, Henry E. Pittsley, trading as the Sayre Lumber 'Company, entered into a contract with F. M. Young and 185 other individuals or firms for the erection of a milk "condensory." This suit was brought by the appellants, as the use plaintiffs, to recover from the 186 defendants, jointly, the balance due on the contract price for the building and equipment of the plant and for extra work done and materials furnished. Demurrers were filed to plaintiffs' statement by different defendants, all, however, on the same ground, that the contract was several and not joint. The court below, having been of opinion that there was no joint liability, entered judgment for the defendants on their demurrers, and from it we have this appeal.

The first clause of the contract is: "It is hereby agreed between the Sayre Lumber Company, of Sayre, Pa., party of the

first part, and the other subscribers hereto as party of the second part. That the first party is to build, equip and complete in good running order for said second party within four months from the date hereof, a Milk Condensory Plant, according to plans and specifications hereto attached, at Clark's Summit, State of Pennsylvania, County of Lackawanna, on land provided by said second party for the agreed price of forty-two thousand dollars ($42,000), which is to be paid as follows: Seven thousand dollars ($7,000) when the building is completed; ten thousand dollars ($10,000) when boilers and engines are set and pumps and can-making machinery are delivered in building; ten thousand dollars ($10,000) when the copper works and all machinery is delivered in building; ten thousand dollars ($10,000) when all machinery is set and arranged in position ready to start; the balance, five thousand dollars ($5,000) sixty days from the starting of said plant. This sixty days time is given on the final payment, as a guarantee that the factory is complete and to demonstrate that the first party has fully discharged his part of this contract and the machinery is all new and first class, and of the character, quality and capability for which it is intended and recommended. And if said trial should discover or develop any flaws, defect or mistake in the construction or equipment of said plant, said first party shall have the right to correct such errors or mistakes within a reasonable time after the discovery of the same. Such errors or mistakes shall be corrected, as quickly as is practical, and with as little obstruction as possible to the continuous running of said plant. It is understood and agreed that the second party is to furnish the land on which to build the said plant, and the water on said land ready to attach the pumps, and to provide all needed tilling, sewerage or drainage, at their own expense, from beyond fifty feet outside of building, if needed, aside from the price of plant named in the contract, and within thirty days from the date of this contract, the second party shall provide the first party with a written or printed description of the land with permit to build thereon, free from all incumbrances or liabilities." That the obligation imposed upon and assumed by the appellees by this clause is joint, is too plain for discussion. Party of the first part agreed to build, equip and complete for the parties of the second part "a

milk condensory plant" for the agreed price of $42,000. The price so agreed upon was to be paid by the parties of the second part, who were also to furnish the land on which the plant was to be built. They were not to pay aliquot parts of the contract price, nor to furnish aliquot portions of the land; but, jointly, they were to pay the sum agreed upon, and, jointly, to furnish the land needed. "Wherever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to produce a several responsibility or a several right. Whether the liability incurred is joint, or several, or such that it is either joint or several at the election of the other contracting party depends (the rule above stated being kept in view) upon the terms of the contract, if they are express:" 1 Parsons on Contracts, page 11. "It is a general presumption of law, when two or more persons undertake an obligation, that they undertake jointly. Words of severance are necessary to overcome this primary presumption. In all written contracts, therefore, whether the liability incurred is joint or several, or joint and several, is to be determined by looking at the words of the instruments, and at them alone. The subject-matter of the contract, and the interests of the parties assuming a liability, have nothing to do with the question. It may be otherwise with respect to the rights of the covenantees, where there are more than one. There are not wanting cases in which it has been held that when the interests of the covenantees are several, they may sue severally, though the terms of the covenant upon which they sue are strictly joint. Even this, however, has been doubted. But, however it may be with the rights of covenantees, it is a settled rule that whether the liability of covenantors is joint, or several, or both, depends exclusively upon the words of the covenant. And the language of severalty or joinder is the test. The covenant is always joint, unless declared to be otherwise: Enys v. Donnithorne, 2 Burrows, 1190; Phillips v. Bonsall, 2 Binn. 138;" City of Philadelphia v. Reeves, 48 Pa. 472.

Of the above-quoted clause in the contract the learned judge said: "The first clause of the contract, standing alone, with

the bare signatures of the Sayre Lumber Company and the defendants, would undoubtedly make the undertaking a joint one;" but he was of opinion that, taking the contract as a whole, the intention of the parties, as gathered from it, was that it was several and not joint, and that each of the parties of the second part should be bound only to the extent of his subscription to the capital stock of a proposed corporation. The clauses in the agreement from which he interpreted the contract as a whole to be several are as follows: "For the purpose of forming a corporation to own and operate said factory and fully carry out the intention of the subscribers, it is hereby agreed that when this contract is closed, second parties are to incorporate under the laws of the State, limited corporation stock, nonassessable, fixing the aggregate amount of capital at not less than the amount subscribed, divided into shares of one hundred dollars each, or according to the laws of the State, which are to be issued to subscribers in proportion to their paid-up interests in said factory; and it is understood and agreed that the by-laws shall provide that one half a cent a can toll shall be set aside as a fund and declared and paid to shareholders as dividend on stock, and shall be paid for no other purpose. And it is further agreed by and between all the subscribers for stock that the producers of milk are to receive all its product brings, less the actual cost of canning, packing, marketing, etc., after one half a cent a can has been declared as a dividend. In consideration of the above, all agree that all their milk shall be furnished to said condensory. For a full and faithful performance of our respective parts of this contract, we bind ourselves and our successors."

The intention of the parties of the second part to the agreement evidently was that they would become incorporated for the purpose of conducting the "milk condensory" under corporate management. One hundred and fifty of the one hundred and eighty-six subscribed for stock, amounting in the aggregate to $40,600. The remaining thirty-six subscribed for no stock at all, but set opposite their respective signatures the number of cows whose milk presumably they agreed they would furnish to the "condensory." Of the one hundred and fifty who agreed to take stock some also made the same apparent agreement as to milk. Instead of making their incorpora-

tion the subject of an independent agreement, they put it in the shape of an appendage, to their contract with the Sayre Lumber Company ; but, though so · appended, it is independent of that contract and is a separate and distinct agreement of the parties relating to a different matter.   The only reference in this appended agreement to the contract with the Sayre Lumber Company is for the purpose of fixing the time when the subscribers would become incorporated.   Without reference to the contract price which they agreed they would pay for their plant, they agreed to become incorporated with a capital not less than the amount of their subscriptions, which amounted to only $40,600, or $1,400 less than they had agreed to pay for their plant.   In this respect, as well as in others, the present case differs from the following, relied upon by the learned judge in support of the judgment entered : Davis & Rankin Building and Manufacturing Co. v. Jones, 32 U. S. App. 32 ; Davis & Rankin Building and Manufacturing Co. v. Barber et al., 51 Fed. Repr. 148 ; Davis v. Belford, 70 Mich. 120 ; * Davis & Rankin Building and Manufacturing Co. v. Murray, 102 Mich. 217 ; † Gibbons v. Grinsel, 79 Wis. 365 ; ‡ Davis v. Ravenna Creamery Co., 48 Nebr. 471. §   We have examined each of these cases, and whether they were correctly decided or whether the contrary view, as expressed in Davis v. Shafer, 50 Fed. Repr. 764, was the correct one, we need not determine ; for, in all of them, the agreement to incorporate was part of the agreement for the erection of the plant.   In each case the agreement was that when the contract price for the plant had been subscribed for, the subscribers would become incorporated, with a capital stock not less than the amount of their aggregate subscriptions as found after their signatures to the agreement for the erection of the plant ; and the opinion of the court in each case was, that it was manifest, from the face of the contract for the erection of the " condensory" or creamery, part of which was the agreement to become incorporated, that the intention of

---

* Also reported in 37 N. W. Repr. 919.
† Also reported in 60 N. W. Repr. 437.
‡ Also reported in 48 N. W. Repr. 255.
§ Also reported in 67 N. W. Repr. 436.

the parties was that the amount each should pay for the erection of the building should be limited to the amount of his subscription. In each case after the name of each of the parties appeared the amount of stock that he had subscribed for in the proposed corporation. There were no parties to any of those agreements who did not agree to subscribe for stock. In the present case the amount of stock subscribed for is less than the contract price that the parties agreed to pay for the plant, and thirty-six of them have not subscribed for any stock at all, but opposite each name appears a specified number of cows. The milk of the cows would be of use to the " condensory;" but neither the milk nor the cows were what Pittsley agreed to receive for what he furnished to the parties of the second part, nor were they what the said parties agreed to pay. He was to get $42,000 in money, and yet, under the view expressed by the learned court below, if each subscriber is limited to the amount of his subscription, instead of receiving $42,000, the appellants cannot collect more than $40,600; and, if the several liability is to be enforced against the remaining parties to the agreement, cows or milk are all that the appellants can recover from them, for nothing else appears opposite the signatures of thirty-six who signed the agreement to pay $42,000 in money.

This judgment was on a demurrer, and all that we now decide is, that, on the face of the contract, as set forth in the statement, the liability of the appellees is joint. The present judgment, relieving them from liability in this joint action against them, is reversed, and the demurrers are overruled, with leave to plead.