In re JOHN B. ROSE CO. In re ROSE BRICK CO. Appeal of TRAVEL-
ER'S INS. CO.

(Circuit Court of Appeals, Second Circuit. June 8, 1921.)

Nos. 210, 211.

1. **Insurance ⬅182—Policy issued to two corporations held not to create
joint and several liability for premiums.**
Policies of employer's liability insurance were issued to two employer
corporations in the form of "A and/or B." The premiums were based
on the pay rolls of the insured during the term of insurance. Neither
corporation owned any stock of the other, though the same man was
president of both and their business relations were more or less intimate;
one, which owned tugs and barges, being sometimes employed to transport
the product of the other. *Held*, that the contracts did not impose a joint
and several liability for premiums, but that each corporation was liable
only for so much of the premiums as was based on its own pay roll;
both being jointly liable in respect to employees, if any, who were jointly
employed.

2. **Contracts ⬅184—Both joint and several obligations may arise from the
same contract.**
It is possible in the same contract that some promises shall be joint
and others by the same promisors shall be several.

3. **Evidence ⬅86—"Presumption of law" defined.**
A "presumption of law" is a rule of law that a particular inference
shall be drawn from a particular circumstance, and, from the fact which
is proved, the law raises an artificial presumption of the existence of the
other fact which is inferred.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Presumption of Law.]

Appeals from the District Court of the United States for the South-
ern District of New York.

In the matter of the John B. Rose Company, bankrupt, James G.
Graham, trustee, and of the Rose Brick Company, bankrupt, Charles
Clayton Bourne, trustee. Appeals by the Travelers' Insurance Com-
pany from orders of the District Court. Affirmed.

See, also, 275 Fed. 416.

These causes come here on appeals from orders entered in the United
States District Court for the Southern District of New York.

The claims against both bankrupts were tried together in the court below,
the trustee of one of the bankrupts having intervened upon the trial of the
claim against the other upon consent. Upon review in the District Court of
the orders of the referee both matters were argued together, and the court
handed down one opinion covering both claims. The body of the orders of the
referee as respects both claimants are precisely alike, and the orders appealed
from of the court below are likewise alike, differing only in the amounts allow-
ed against the respective bankrupts. While each bankrupt filed separate pe-
titions for review and separate orders were entered in each matter by the
referee and by the court, the same testimony and exhibits covered the claims
of both. The Travelers' Insurance Company is the claimant-appellant in both
causes.

The appeals will be disposed of in this court in one opinion.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William J. Moran, of New York City, for appellant.

Hughes, Rounds, Schurman & Dwight, of New York City (Richard E. Dwight and Allen S. Hubbard, both of New York City, of counsel), for appellee Graham.

Graham Witschief, of Newburgh, N. Y., for appellee Bourne.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] The claims involved are for premiums alleged to have been earned by the Travelers' Insurance Company upon policies of workmen's compensation and of liability insurance issued and delivered to both bankrupts at their special instance and request.

The claimant filed an identical proof of claim against both companies for a balance of premiums due and owing to it upon six policies of insurance in the sum of $8,013.73. Upon the hearings before the referee the claimant reduced its claim to $7,985.67. It is conceded that of this latter amount $4,972.96 was computed upon the pay roll expenditures of the John B. Rose Company and that $3,012.71 was computed upon the pay roll expenditures of the Rose Brick Company. The contention between the parties is as to whether or not both the John B. Rose Company and the Rose Brick Company, both bankrupts, are jointly and severally liable to the Travelers' Insurance Company, claimant, for its claim of $7,985.67. The question resolves itself into one of law and depends upon the interpretation to be given to the contracts entered into on one side by the insurance company, and on the other side by the two assured bankrupt companies.

There is no issue of fact involved, there being no disputed facts and no contradiction in the evidence. The trustees of the bankrupts offered no evidence and rested upon the evidence and testimony presented by the insurance company, the claimant herein.

It appears that six policies were issued to "The Rose Brick Company and/or The J. B. Rose Brick Company." Only one policy is printed in the record, but it is stipulated that this policy is typical of the others. The policies were issued upon "Declarations," of both bankrupts together. Said "Declarations" are "set forth" in each policy and, according to the terms of the policy, are "hereby made a part thereof." The said declarations were made by the "employer," as follows:

"The signature to this proposal is accepted by this employer as his signature.          The Rose Brick Company and/or
                              "The J. B. Rose Company,
                                   "Per P. E. Farnum."

In said applications the bankrupts declared, among other things, as follows:

"Item 1.   Name of employer, the Rose Brick Company and/or the J. B. Rose Company; P. O. Address, Roseton, N. Y.   The employer is corporation."

While there were six policies issued and accepted, three of them covered the period July 27, 1916, to July 27, 1917, and the other three for the succeeding period between July 27, 1917, and June 10, 1918, and the three in each group covered different kinds of liability, one covering

"workmen's compensation," another covering liability to any person (the public) and another covering "marine" liability. A separate policy of each of said kinds was not issued to each of the bankrupts, but each kind of policy covered both bankrupts, and only one policy of each kind was issued to the "employer" or to the "assured."

The policies contain the following provision with respect to the payment of the premium:

"* * * The premium is based upon the entire remuneration earned during the term of the policy by all employees of the employer except * * * If the earned premium thus computed is greater than the advance estimated premium paid, the employer shall immediately pay the additional amount to the company; if less, the company shall immediately return the unearned premium to the employer."

It is also provided:

"The company shall be permitted, at all reasonable times, * * * to examine the employer's books and records at any reasonable time during the policy term, or any extension thereof, or within one year after its final expiration, for the purpose of determining the actual premium earned while the policy was in force."

In all of the policies there is a definite obligation to pay premiums, which when originally issued were "estimated." Premiums were originally "estimated" because the premium was computed according to rates fixed by the policies upon pay roll expenditures to be made by the employer or the assured during the policy period—which expenditures were ascertained by the insurer's auditors during and after the close of the policy period. The policies prescribed different rates for different classifications of work involving the pay roll expenditures.

The bookkeeper of the Rose Brick Company testified that the statements rendered by the claimant and received at the Roseton office were not only for the amount due by the Rose Brick Company, but they were also for the total amount due; that he would compute such statements and ascertain the amount owing as between the two companies by the Rose Brick Company, and would charge such amounts on the books of that company. He said the payment of the premiums was generally attended to at the New York office, and that that office would send checks from each company—"usually a thousand dollars on account."

The insurance broker testified that he would receive from the bankrupts payment of the premiums as follows:

"Generally received a check from the New York office, made out to me personally, and from time to time the check, as I remember it, had stamped on the bottom, Rose Brick Co. or J. B. Rose Co., per J. B. Rose, and underneath was generally the signature of John B. Rose."

He also testified that the checks were received on the general bill, and that he never received any instructions from either corporation that the remittances which were made should be applied in any way except on the general account of earnings under all of the policies.

The referee held that the contract between the insurance company and the two assured companies imposed a joint and several obligation upon the latter, and he granted orders overruling the objections filed by the respective trustees in bankruptcy of the John B. Rose Company

and of the Rose Brick Company. Orders were entered against each of the assured companies allowing the claim of the insurance company in the full amount of $7,985.67. Thereupon the respective trustees of the bankrupt companies petitioned to have the orders revised. The District Judge revised the orders entered and filed a memorandum opinion in which he said:

"In my judgment, the clear meaning of the expression 'and/or' in such a policy is to designate as the employer either or both companies respectively. That is, in one policy three employers are designated, the Rose Brick Company, the J. B. Rose Company, and the two together. The liability resulting therefrom is that of each company for the premium based upon its pay roll and that of both companies jointly for the aggregate of their pay rolls in case they engaged in some activity under which they jointly had employees.

"No such enterprise was undertaken. No proof is offered that the two companies combined in any way whatsoever, or that they had any joint employees.

"Clearly, it could not have been intended that each company should be a guarantor for the other company, as any such intention could and should have been plainly expressed.

"The claim will be allowed against each company on the basis of its pay roll alone.

"The order of the referee will be revised accordingly."

The result is that the insurance company's claim against the John B. Rose Company is restricted to the premiums based upon the pay roll of that company which amount to $4,972.96. And the claim against the Rose Brick Company is restricted to the premiums based upon its own pay roll which amounts to $3,012.71.

The claimant insists that the court erred in determining that the words "and/or" in the contracts or policies of insurance did not create a joint and several liability on the part of the bankrupt companies, and in not allowing its claim against both bankrupts in the sum of $7,985.67.

It is contended by the claimant that the obligation of the J. B. Rose Company and of the Rose Brick Company to pay the premiums prescribed by the policy contracts is joint, and therefore that each bankrupt is severally liable for the entire claim set forth in the proof of debt.

In Chitty on Contracts, vol. 1 (11th Ed.) p. 139, the law on this subject is stated as follows:

"It is said, moreover, to be a principle of law, that if several persons stipulate for the performance of an act, they are impliedly bound jointly, and not severally; and that there must be express words creating a several liability, in order to render them separately responsible. But the latter part of this proposition is not strictly correct; the true rule being, that even in the absence of express words, an agreement prima facie joint may be construed to be several, if the interest of either party, appearing upon the face of the instrument, shall require that construction."

In Parsons on Contracts the rule is stated as follows:

"Wherever an obligation is undertaken by two or more, or a right given to two or more, it is the general presumption of law that it is a joint obligation or right. Words of express joinder are not necessary for this purpose; but on the other hand, there should be words of severance, in order to produce a several responsibility or a several right.

"Whether the liability incurred is joint, or several, or such that it is either joint or several at the election of the other contracting party, depends

(the rule above stated being kept in view) upon the terms of the contract, if they are express; and where they are not express, upon the intention of the parties as gathered from all the circumstances of the case. It may be doubted, however, whether anything less than express words can raise a liability which shall be at once a joint and a several liability."

And in Williston on Contracts, vol. 1, § 322, it is said that—

"Following the analogy of the rule of real property that an estate granted to two persons created a joint tenancy in common, it was early held and, except as changed by statute, the law remains that promises by two or more persons create a joint duty unless the contrary is stated."

And see White v. Tyndall, 13 A. C., 263; Noyes v. Barnard, 63 Fed. 782, 11 C. C. A. 424; Alpaugh v. Wood, 53 N. J. Law, 638, 23 Atl. 261; Pittsley v. King, 206 Pa. 193, 55 Atl. 920; Mintz v. Tri-County Natural Gas Co., 259 Pa. 477, 103 Atl. 285; Nabors v. Producers' Oil Co., 140 La. 985, 74 South. 527, L. R. A. 1917D, 1115; Eveleth v. Sawyer, 96 Me. 227, 52 Atl. 639; Eller v. Lacy, 137 Ind. 436, 36 N. E. 1088; Milner Bank, etc., Co. v. Whipple's Est., 61 Colo. 252, 156 Pac. 1098.

[3] A presumption of law is a rule of law that a particular inference shall be drawn from a particular circumstance. From the fact which is proved the law raises an artificial presumption of the existence of the other fact which is inferred.

In arriving at the meaning of this contract we must consider all the circumstances including the relations existing between the two corporations insured and the business to which the contract relates. We must ascertain by reasonable inference what the parties understood and mutually intended by the words which they employed. We must then give effect, if possible, to the meaning so ascertained.

The John B. Rose Company and the Rose Brick Company, the bankrupts, in whose name the policies of insurance were issued, are distinct corporations, and John B. Rose was the president of each. The John B. Rose Company was engaged in taking builders' sand and gravel from its own banks at Roseton near Newburgh, N. Y. It was also the owner of barges and tugboats and was engaged in the transportation on the Hudson river of its own products, sand and gravel, and in addition of brick manufactured by the Rose Brick Company at Marlborough, some 8 or 10 miles distant from the plant of the Rose Brick Company. At times the Rose Brick Company chartered barges, with their crews, of the John B. Rose Company. The business relations between these two companies were of a more or less intimate character. John B. Rose owned a majority of the stock of the John B. Rose Company, and as executor of the estate of his father had control of almost the entire stock of the Rose Brick Company. The referee in the memorandum which he filed in referring to the business operations of the two companies states that it may very well have been in the mind of Rose or of his insurance broker, Farnum, having in mind the risks incurred by the two companies, that an employee of the one company might very well de facto assert an accident claim against the other company. Counsel for the trustee asserts in his brief that no employees

of the Rose Brick Company were at the sand and gravel plant of the John B. Rose Company, and that no employees of the latter company were at the plant of the Rose Brick Company. He then points out that if an employee of the Rose Brick Company was injured only the Rose Brick Company could bring suit upon the policy against the insurance company, and that if an employee of the Rose Brick Company was injured only the Rose Brick Company could recover indemnity from the insurance company for such an injury. He concludes that it is inconceivable that the contracting parties in entering into the contract evidenced by the policies intended that the insurance company should be liable to the Rose Brick Company for an injury sustained by an employee of the John B. Rose Company while engaged in working exclusively for the John B. Rose Company, or that the insurance company should be obligated to indemnify the John B. Rose Company for an injury sustained by an employee of the Rose Brick Company while engaged exclusively in work for the latter company. We think this is undoubtedly so. The contract seems to us to indicate a plain intent to create a several liability upon the part of the insurance company to the two companies assured. It also indicated a like intent to create a several liability with regard to the obligation of the two companies assured for the payment of the premiums. The liability of each company for premiums is commensurate with the benefits received by each company under the policy. But while the contract signifies the intention stated it indicates something more. The words "and/or" cannot be ignored. They have a meaning. It seems to us that in writing the policies it was had in mind that in view of the fact that the John B. Rose Company's barges and their crews were employed to transport the brick manufactured by the Rose Brick Company a situation might arise in which there would be joint employees and that special provision should be made for the protection of the two companies in that class of cases.

The policies were drawn to insure three employers:

1. The Rose Brick Company against injuries to its employees.

2. The John B. Rose Company against injuries to its employees.

3. The two companies together against injuries to their joint employees.

As the resulting liability of each company for the premiums is based upon its pay roll, there is a several liability of the Rose Brick Company for the number of employees carried on its pay roll. A like several liability of the John B. Rose Company exists for the number of employees carried on its pay roll. In addition there would exist a joint liability of the two companies for the aggregate number of employees carried on their pay rolls if the companies engaged in any joint undertaking. The fact, however, is not disclosed by the evidence that the two companies did engage in any joint undertaking or that they had any joint employees.

[2] It is possible in the same contract that some promises shall be joint and others by the same promisors shall be several. Williston on Contracts, vol. 1, § 325. And see Buster v. Fletcher, 22 Idaho, 172,

125 Pac. 226; Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80; Krbel v. Krbel, 84 Neb. 160, 120 N. W. 935. It is possible that the John B. Rose Company and the Rose Brick Company might make themselves jointly liable for premiums on policies insuring their joint employees if they should have any, while each might assume a several liability for premiums on policies insuring simply its own employees. The question whether this was what the parties did in the contract now under consideration is to be determined by the language used and by intention of the parties as gathered from all the circumstances of the case.

In determining the question herein presented we must assume, unless compelled by the language used to a contrary conclusion, that the intent of the parties was to enter into a valid contract and one which it was in the power of the corporations to make. We are bound if possible so to construe the contract as to make it legal. For it is a cardinal rule of interpretation that where a contract is fairly open to two constructions, by one of which it would be lawful and by the other unlawful, the former must be adopted. Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940; United States v. Central Pacific Railroad Co., 118 U. S. 235, 6 Sup. Ct. 1038, 30 L. Ed. 173. The John B. Rose Company, as stated in an opinion filed at this term,[1] owned none of the stock in the Rose Brick Company and had no direct interest therein. It also appeared that the Rose Brick Company owned none of the stock of the John B. Rose Company. For these companies to have entered into a joint agreement whereby they assumed a joint obligation to pay the premiums on insurance policies for the protection of employees not jointly employed by them would seem to be ultra vires their powers and void. The ultra vires promise of one could not make valid the ultra vires promise of the other.

We do not feel compelled to the conclusion that the parties had such intention. In this connection it is significant that the "declarations," upon which the policies were issued, were signed not in the form "Rose Brick Company and John B. Rose Company," but in the form "Rose Brick Company and/or J. B. Rose Company." And in all six policies the assured is so described. If the intention was to enter into a mere joint contract we fail to understand the significance of the words "and/or." We think the meaning of those words was stated correctly by the court below in the construction put upon the agreement, and which has been already set forth in this opinion.

The orders are affirmed.

[1] Matter of John B. Rose Co., Bankrupt, Metropolitan Bank, Claimant-Appellant, v. James G. Graham, Trustee in Bankruptcy, Appellee. 275 Fed. 416.