## Yadusky et al. v. Shugars et al., Administrators.

*H. O. Bechtel* and *B. V. O'Hare*, for plaintiffs.

*A. L. Shay* and *C. E. Berger*, for defendants.

KOCH, P. J., Jan. 6, 1930.—The question arising in this case is whether a certain contract is joint or several, or joint and several. The facts are all gathered from the pleadings, no other testimony having been offered. William B. Shugars died intestate on March 8, 1925.

On Oct. 15, 1920, William B. Shugars, Leopold E. Schimpf and F. J. Heilreigel, as parties of the first part, entered into written articles of agreement with the plaintiffs in this case to sell to them 395 shares of the capital stock of the Liberty Brewing Company and also to sell 100 shares of said stock to said Liberty Brewing Company, the said 495 shares being all of the outstanding capital stock of said company. The purchase prices amounted to $41,000,

542

of which $21,000 was paid in cash, and notes were given to said William B. Shugars, trustee, for the balance.

When the said stock was sold, the plaintiffs in this case desired the company to be free from all debts excepting two mortgages. So it was, *inter alia*, stipulated in the said written articles of agreement as follows:

"The parties of the first part agree that other than the first mortgage now owned by the Miners Realty Company and the second mortgage bonds outstanding, there are no debts owing by the Liberty Brewing Company, and if any other debts be found that have been incurred by the Liberty Brewing Company prior to October 10, 1920, that they, the parties of the first part, agree to pay the same and be personally liable for the same.

"The parties of the first part agree that they are and will be personally liable for all things done in connection with the operation or management of the business of the Liberty Brewing Company prior to the date of this agreement."

The last stipulation in said articles of agreement reads as follows:

"And for the faithful performance of the covenants of this agreement the parties hereto bind themselves, their heirs, executors and administrators."

Some time after the sale of said 495 shares of said capital stock was so effected, the United States Government laid an additional assessment on the said brewing company for income and excess profit taxes for the years 1919 and 1920, in the aggregate amounting to $21,250.18. Said taxes for the year 1919 were $17,151, and for the year 1920, $3999.18. The plaintiffs in this case being duly notified of the said additional assessments notified the defendant and demanded payment of said taxes, but payment was not made by the defendant, and the United States Government issued its warrant of distraint and levied upon the property of the Liberty Brewing Company. And the plaintiffs aver that they were compelled to pay the said taxes. They have, therefore, brought this suit to recover said $21,250.18, together with interest, from the estate of the said William B. Shugars, deceased. As the taxes were paid in partial amounts, interest is claimed on $5000 from May 15, 1925; on another $5000 from Sept. 23, 1925; on the third $5000 from Dec. 1, 1925, and on $6250.18 from March 24, 1926. So it appears that the said William B. Shugars died more than two months before the plaintiffs made the first partial payment of said taxes to the United States Government. This suit was brought on Oct. 4, 1926.

Can this suit against the estate of Shugars alone be maintained?

When the trial was had the jury was directed to render a verdict for the defendants, and we think we must let the verdict stand.

"It is a general presumption of law, when two or more persons undertake an obligation, that they undertake jointly. . . . In all written contracts, therefore, whether the liability incurred is joint or several, or joint and several, is to be determined by looking at the words of the instruments, and at them alone. The subject-matter of the contract, and the interests of the parties assuming a liability, have nothing to do with the question. . . . And the language of severalty or joinder is the test. *The covenant is always joint, unless declared to be otherwise* [italics ours]: Enys *v.* Donnithorne, 2 Burrows, 1190; Philips *v.* Bonsall, 2 Binn. 138:" Philadelphia *v.* Reeves and Cabot, 48 Pa. 472; Pittsley *v.* King, 206 Pa. 193.

So far as the contract to sell all the outstanding capital stock of the brewing company was concerned, the contract was certainly only joint, and was so performed, and the buyers of the stock had a right to expect the company of its issuance to be free from all the obligations incurred by the company prior

to Oct. 10, 1920, excepting the mortgages referred to in the written articles of agreement. For all other obligations of the company than said mortgages there was to be no corporate liability; that liability was to pass to and upon the sellers of the stock. In other words, such obligations became personal instead of corporate, so far as the persons to the contract were concerned. That is to say, the parties of the first part made themselves personally liable for them. But that does not mean that they, therefore, made themselves severally liable. They were selling the stock together and they were to be liable together for the company's debts, excepting said mortgages. The last stipulation in the contract is that "the parties hereto bind themselves, their heirs, executors and administrators." That is, the two parties, the two groups of men, so bind themselves as groups, their heirs, executors and administrators—the first group to sell stock and pay certain debts, the second group to buy the stock and pay for it.

The plaintiffs insist that Besore et al. *v.* Potter, 12 S. & R. 154, sustains their contention. But we cannot agree with them. That case turned upon the language of a penal bill which concluded thus: "For the true payment whereof, we do bind ourselves, our heirs, executors, administrator, and *every of them,* unto the said Frederick Nicodemus, his executors, administrators and assigns, in the penal sum of two thousand dollars money aforesaid." And the Supreme Court held that the penal bill was joint and several, because of the words *"every of them,"* saying: "All of them would have been *joint,* every of them is several; and the natural construction, the common signification of these words would be, that the respective heirs of the obligors were intended to be bound." If the agreement now before us said "the parties hereto bind themselves *severally,"* the obligation would be joint and several.

In Wampler *v.* Shissler, 1 W. & S. 365, 368, a recognizance binding three persons in a certain sum "to be levied of their goods and chattels, lands and tenements, *respectively,"* was held to be joint and several, because the word "respectively" was "equivalent to a provision that the amount should be levied of *each."*

In Geddis *v.* Hawk, Executor, 10 S. & R. 33, in the obligation, the concluding words were "we bind ourselves, and each of our heirs, executors and administrators firmly, &c.," and the word "each" made the obligation joint and several.

We must not overlook the fact that here the defendants are administrators, and the obligation does not severally bind the administrators of each of the parties of the first part. Nor do the words that, "the parties of the first part agree to pay the same and be personally liable for the same" help the plaintiff's case any. Shugars is dead, so he cannot be personally liable, because he is no longer in being, and he did not bind himself and his heirs, executors and administrators each personally.

Livingstone *v.* Aaronson, 48 Pa. C. C. Reps. 54, was a suit for rent, the lease respecting the payment of which said: "The parties of the second part do hereby covenant, etc., that they will yearly and every year during the term, etc., pay or cause to be paid unto the said party of the first part, etc., the said yearly rent reserved, etc., on the days and in the manner prescribed, etc.," and Kunkel, P. J., held that the contract was joint and not several and that the suit against one alone could not be maintained.

"In Sheppard's Touchstone, page 375, it is said: "If two, three, or more bind themselves in an obligation thus, *obligamus nos,* and say no more, the obligation is and shall be taken to be joint only, and not several.' In other words, the presumption of the law is that when two or more enter into a contract or an obligation, without adding language disclosing a different inter-

pretation the undertaking is a joint and not a several one. This rule has been uniformly recognized and adhered to in all our cases:" Morrison v. American Surety Co., 224 Pa. 41.

Our conclusion is that the obligation was that of all and not of Shugars or of either of the other two singly and alone, and that this suit against the estate of Shugars cannot be maintained.

And now, Jan. 6, 1930, the motion in arrest of judgment and for a new trial is overruled, and the prothonotary is directed to enter judgment in the defendant's favor upon payment of the jury fee.

From M. M. Burke, Shenandoah, Pa.