OVER THE ROAD DRIVERS, INC.,
Plaintiff, Appellee,

v.

TRANSPORT INSURANCE COMPANY,
Defendant, Appellant.

No. 79–1094.

United States Court of Appeals,
First Circuit.

Argued Sept. 12, 1980.

Decided Dec. 10, 1980.

James E. Grumbach, Boston, Mass., with whom Paul L. McGill, Alan G. Miller, and Morrison, Mahoney & Miller, Boston, Mass., were on brief, for defendant, appellant.

Toni G. Wolfman, Boston, Mass., with whom Foley, Hoag & Eliot, Boston, Mass., was on brief, for plaintiff, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and NELSON,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Over The Road Drivers, Inc. sued appellant Transport Insurance Company for $26,482.27 in the district court. Transport did not deny that the sum was due Over The Road as a net return of premiums under a workmen's compensation policy issued by Transport but claimed the right to offset against this debt monies owed Transport by other companies insured under the same policy. Transport also sought dismissal because of Over The Road's failure to join its coinsureds as parties to the action. Summary judgment was entered in favor of Over The Road, and Transport appeals.

Transport and its wholly–owned subsidiary TICO Insurance Company issue insurance policies to trucking companies. In 1973 Transport issued both a general liability policy and a workmen's compensation policy to Old Colony Transportation, Inc. and various of its corporate affiliates. In early 1975 Over The Road, an affiliate of Old Colony newly formed for the purpose of leasing truck drivers to service a particular client, was added to the workmen's compensation policy as an insured.

In early 1976 the affiliated companies renewed their coverage and Transport issued two new policies. General Liability Policy No. GL–521–76–1 covered six companies, not including Over The Road. Workmen's Compensation Policy No. WCR–521–76–1–the policy at issue here–covered five of these companies, in addition to Over The Road. A seventh affiliated company was added to the policy on September 2, 1977.

The insured companies are under common ownership and are all engaged in trucking–related activities. George Vigeant, Jr., an officer and principal in all or most of the companies, purchased the insurance for all the companies.

Policy premiums were paid on the basis of a so–called "Retrospective Rating Plan." Under this plan, the companies were required to pay a "standard premium" calculated on the basis of the current salary of employees covered by the policy. Each of the seven companies was billed separately, and each paid a premium based on its own employees. At the expiration of the policy term, a retrospective premium was to be calculated, based in part on the companies' actual incurred losses under the policy. If the retrospective premium exceeded the amount of standard premiums paid, the companies were required to pay Transport the difference; if the standard premiums paid exceeded the retrospective premium, Transport was required to refund the difference to the companies. Transport periodically issued to each company separately an "Experience Report," which calculated that company's "Retrospective Position," i. e., the difference between the standard premium and the retrospective premium for the period of calculation as computed for that company alone.

In the spring of 1978, Transport terminated all insurance coverage of the affiliated companies. At that time, the retrospective premium calculation indicated a net return of $26,482.27 due Over The Road. However, other of the insured companies owed Transport a total of $161,185.13 under the 1976 policies. Transport took the position that it was entitled to offset against this larger amount the $26,482.27 owed to

---

* Of the District of Massachusetts, sitting by designation.

Over The Road. Over The Road disagreed and instituted this action.[1]

 The critical issue is whether the seven companies insured by the Workmen's Compensation Policy became jointly and severally liable for all premiums owing by any of them under the policy. Unlike the General Liability Policy, which provides (by way of a "Premium Determination Agreement") that "[a]fter each computation, the NAMED INSURED(S) hereby agrees, jointly and severally, that it (they) shall pay to the COMPANY any Deficit Premium developed by such computations ...," the Workmen's Compensation Policy contains no such express language making each insured company jointly and severally liable for all premiums owed. The policy simply refers throughout to "the named insured" as being responsible for premium payments. On an attached "Declarations Amendment Endorsement," the "Name of Insured" is defined as:

> "Old Colony Transportation Co., Inc. and/or Bay State Realty & Advertising Co. and/or Interstate Transport Leasing Corp. and/or Interstate–Carolina Transport Leasing Corp. and/or Over The Road Drivers, Inc. and/or A–O.K. Leasing Corp. and/or Vigeant Labor Leasing Corp."

 In granting summary judgment, and thus concluding that the policy did not create joint and several liability for premium payments, the district court stated, "there is simply no ambiguity in the language of the workmen's compensation policy such as would permit the Court to go into the history of the formation of the policy and make a construction different from what I think are the plain terms." While we agree, ultimately, that Over The Road may recover, we do not agree that the policy language is clear and unambiguous. Inclusion of the seven companies as "the named insured" under a single insurance contract might indicate that the companies were to be treated as a group or joint operation. And the definition of "named insured" as company A "and/or" company B, etc., while not sufficient in itself to create joint and several liability, In re John B. Rose Co., 275 F. 409 (2d Cir. 1921); 6 Couch on Insurance 2d § 31:146 (1961), suggests at least a possibility that each company was intended to be liable for the defaults of all. We can find nothing in "the plain terms" of the contract which tells us unambiguously that liability is to be separate, not joint. We therefore think that evidence concerning "the history of the formation of the policy" and the course of dealing under it would be admissible, if available and relevant, to establish the intention of the parties. 3 Corbin on Contracts §§ 559, 579 (2d ed. 1960).

It does not follow, however, that summary judgment was inappropriate here.[2] The judgment is entitled to stand if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For us to vacate and remand, it must appear that issues of fact were adequately raised below that need to be resolved before the legal issues in the case can be decided. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968). Transport argues that a genuine factual dispute indeed exists "as to the meaning of the policy and as to the parties' intent regarding premium liability." But Transport is unable to point to specific facts that were properly asserted in its affidavits and supporting materials which, if established at trial, would entitle it to prevail on these matters. The affidavits submitted by

---

1. On April 27, 1978, prior to the institution of this action, Transport filed suit against six affiliated companies, not including Over The Road, to recover $161,185.13 claimed to be owed it. On January 26, 1979, after the hearing and the district court's ruling on the summary judgment motion in this case, Transport amended its complaint in the state action to add Over The Road as a defendant.

2. An appellate court need not affirm a district court's decision on a summary judgment motion for the same reasons that persuaded the district court to grant the motion. 10 Wright & Miller, Federal Practice and Procedure § 2716, at 240.

Transport in opposition to the summary judgment motion state, for the most part, either irrelevancies or bare conclusions which cannot be accepted as sufficient for summary judgment purposes. The affidavit of Mr. Ayres, Transport's Regional Manager for New England, who personally dealt with Mr. Vigeant concerning issuance of insurance to the affiliated companies, says, in pertinent part, only that,

"it was agreed and understood between Transport and the Old Colony Group that, with regard to premiums, there would be joint and several liability with regard to both of the Policies among the various affiliates comprising the Old Colony Group. It was further agreed and understood that said joint and several premium liability was a prerequisite and condition to the issuance of the Policies to the Old Colony Group by Transport."

Mr. McLaughlin, Vice President of Underwriting for Transport in its Dallas, Texas home office, who supervised the underwriting of the Workmen's Compensation Policy, avers in his affidavit that,

"it was the intent of both Transport and The Old Colony Group to consider that the Policies were issued to the group as a whole. Accordingly, all the premiums owed by or all the credits owed to each corporation within the Old Colony Group were to be added together, with the final amount owed or owing to be a joint obligation or right."

■ To the extent these statements put forth the unilateral understanding of Transport and its officers concerning the meaning of the insurance contract, they prove nothing; it is the parties' *mutual* understanding of what the contract meant that is important here. *Cf. Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979) ("[u]ndisclosed, subjective intentions are immaterial in this commercial transaction"). To the extent the statements purport to be evidence of what representatives of Over The Road and the affiliated companies understood the obligation to be, they are conclusory and not "made on personal knowledge" of the affiant as Fed.R.Civ.P. 56(e) requires. The affidavits contain no hint of any conduct or communications on the part of Mr. Vigeant or other representatives of the affiliated companies that would have manifested to a contracting party "understandings" and "intentions" such as the ones described.[3] "Conclusory allegations, unsupported by factual data, do not create a triable issue of fact." *Kung v. Fom Investment Co.*, 563 F.2d 1316, 1318 (9th Cir. 1977); *see Maiorana v. MacDonald*, 596 F.2d 1072 (1st Cir. 1979); *Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); *Klopfenstein v. Pargeter, supra*, 597 F.2d 150; *Bruce v. Martin–Marietta Corp.*, 544 F.2d 442 (10th Cir. 1976); *O. Hodgkins Sales Corp. v. Chrysler Corp.*, 327 F.Supp. 1020 (D.Mass.1971). *See also First National Bank of Arizona v. Cities Service Co., supra*, 391 U.S. at 288–90, 88 S.Ct. at 1592–1593. The affidavits do not go beyond the sort of unsupported assertions more appropriately confined to the pleadings. They are insufficient to defeat a properly supported motion for summary judgment.[4] *Cf. Hahn v.*

---

**3.** In his own affidavit, filed in support of Over The Road's motion for summary judgment, Mr. Vigeant states,

"From the beginning of my dealings with Transport, I have insisted that Over The Road be treated on an individual basis but have agreed, as an administrative convenience, to the naming of several other independent companies of which I have been an officer as insureds under common policies with Over The Road. However, individual treatment of each insured entity has always been an express condition which I have communicated to all insurance companies which have submitted yearly bids to sell workmen's compensation insurance to any of the corporations of which I have been an officer." We note the possibility that there may have in fact been no "meeting of the minds" on the issue of joint versus several liability for premium payments.

The two internal office memoranda submitted by Transport to accompany Mr. Ayres' affidavit contain no information relevant to Over The Road's intentions regarding joint liability.

**4.** It is true that, as movant for summary judgment, Over The Road assumed the burden of demonstrating that there was no genuine issue of material fact. *Mack v. Cape Elizabeth*

*Sargent, supra,* 523 F.2d 461; *American International Insurance Co. v. Vessel SS Fortaleza,* 585 F.2d 22 (1st Cir. 1978); *Bloomgarden v. Coyer,* 479 F.2d 201, 208 (D.C.Cir.1973); *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir. 1972).

Appellant maintains that a trial is necessary to permit it to establish or further develop (1) the common ownership and management of the affiliated companies; (2) the common agency by Mr. Vigeant in procuring the insurance contract; (3) the custom in the insurance industry of creating joint and several liability in similar contracts; and (4) the fact that Transport would not have insured Over The Road or other affiliated companies unless they agreed to assume the obligation of premiums jointly.

■ The common ownership of the companies and Mr. Vigeant's role in procuring the insurance are conceded and do not suffice to establish joint and several liability. *American Mutual Liability Insurance Co. v. Bollinger Corp.,* 402 F.Supp. 1179 (W.D.Pa. 1975) and *Liberty Mutual Insurance Co. v. Petroleum Venture Capital Corp.,* 216 So.2d 925 (La.App.1968), cited by appellant, do not suggest otherwise. In both these cases liability was imposed on one corporation for insurance premiums attributable to coverage of its subsidiaries or affiliates, when that corporation had procured the insurance coverage and had consistently been billed for and paid all premiums. The theory of these cases was *not* that the companies had assumed joint and several liability (which would have also imposed an obligation on the subsidiaries and affiliates to pay premiums for the procuring company) but that there was an agreement, substantiated by a

course of conduct, that one particular party would pay the premiums for all. Given the legal arguments being advanced by Transport in this case, we see no need for a trial to further develop the factors of common ownership and agency.[5]

Neither would proof of "industry custom" be significant here. The fact that other insurance companies and other insureds make provision for joint and several liability in their policies—although perhaps suggestive of what Transport would have liked to have accomplished here—is not a reason to impose such a burden on insureds who may have had little reason to suspect that such a provision was contemplated. Since Over The Road is not a member of the "insurance industry," it would not have been privy to any industry understandings. Likewise, the contention that Transport "would not have insured" Over The Road absent an agreement on joint and several liability is but a variant of the averment that Transport "understood" that joint and several liability was agreed to; Transport's unilateral understanding, as discussed above, is not dispositive of the issues here.

■ When opposing summary judgment, Transport asserted in a memorandum that "discovery may uncover further evidence, both written and oral [bearing on the intent of the parties]." The sort of evidence that might have been uncovered was nowhere described. Appellant was not entitled to a denial of appellee's summary judgment motion on the basis of a hope that some evidence might have developed. *See Hahn v. Sargent, supra,* 523 F.2d 461; *Schneider v. McKesson & Robbins,* 254 F.2d 827 (2d Cir. 1958). Furthermore, appellant had ample

*School Board,* 553 F.2d 720 (1st Cir. 1977). It met this burden, however, by introducing uncontested evidence of the policy's content and Transport's billing practices, which, as we hold below, entitled it to judgment absent extrinsic evidence indicating that the parties intended joint liability. It then became Transport's burden to put forth facts that might have served at trial as evidence of such an intention. *Cf. Cartagena v. Secretary of the Navy,* 618 F.2d 130, 137 (1st Cir. 1980); *Beal v. Lindsay,* 468 F.2d 287 (2d Cir. 1972).

5. Transport does not argue before this court that this is one of the "rare particular situations" warranting "some disregard" of corporate structure "in order to prevent gross inequity." *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 620, 233 N.E.2d 748, 752 (1968). It would have been extremely difficult to maintain this action on such a ground. *See Manufacturing Improvement Corp. v. Georgia Pacific Corp.,* 362 Mass. 398, 286 N.E.2d 339 (1972); *M. McDonough Corp. v. Connolly,* 313 Mass. 62, 46 N.E.2d 576 (1943).

time to begin discovery prior to the hearing on summary judgment but chose not to do so. Over The Road filed the motion for summary judgment, accompanied by Mr. Vigeant's affidavit, on September 26, 1978. The hearing on the motion was held on January 15, 1979. Had appellant wished to examine Mr. Vigeant, for example, concerning his participation in the negotiations for insurance and his understanding of the policies, it might have taken his deposition in the intervening period.[6] For some reason, after the hearing on the summary judgment motion had already been scheduled for January 15, 1979, appellant on December 14, 1978 gave notice of depositions to be taken on January 18 and 19, 1979. No explanation was offered why these depositions could not have been scheduled to take place before the summary judgment hearing. Appellant did not, in fact, request the district court to postpone the hearing until discovery had been taken, as it might have done under Fed.R.Civ.P. 56(f). In these circumstances, the absence of discovery in no way precludes summary judgment. *See American International Insurance Co. v. Vessel SS Fortaleza, supra,* 585 F.2d 22; *British Airways Board v. Boeing Co.,* 585 F.2d 946 (9th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979); *Lamb's Patio Theatre v. Universal Film Exchange,* 582 F.2d 1068 (7th Cir. 1978); *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289 (8th Cir. 1975), *cert. denied,* 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976); *Schneider v. McKesson & Robbins, supra,* 254 F.2d 827.

In support of its motion for summary judgment, Over The Road submitted the

insurance policy itself and evidence of the conduct of the parties under it with respect to payment of premiums and calculation of refunds.[7] We conclude that on the basis of this evidence, which was not contested by Transport, Over The Road was entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c).

At the forefront of our thinking is the fact that the insurance contract makes no reference to joint liability although a provision to this effect could easily have been included. (Such a provision was in fact included in the General Liability Policy.) Transport drafted the printed policy form used here and had virtually complete control over the terms contained in the final agreement; none of the standard provisions were altered by negotiation. We need not adopt an ironclad rule of interpretation "contra proferentem" to conclude that it would be unfair for an insurance company, in complete control of its printed forms, to impose joint liability on insureds by way of a printed policy containing no mention of such an arrangement, absent extrinsic evidence clearly indicating that joint liability was intended by the parties on *both* sides of the agreement. *Cf. Marston v. American Employers Insurance Co.,* 439 F.2d 1035 (1st Cir. 1971); *Bryan v. Continental Casualty Co.,* 587 F.2d 441 (9th Cir. 1978); *see also 3 Corbin on Contracts* § 554 (2d ed. 1960).

The undisputed evidence concerning the parties' practices with respect to premium payments and calculation of refunds fortifies our conclusion that it would be unfair to impose joint liability without either an express contractual provision or evidence of mutual understanding on this score. While

6. We also note that Transport filed its action in state court on April 27, 1978, *see* note 1, *supra.* It thus had additional time during which it could have deposed Mr. Vigeant concerning the same issue involved in this case.

7. Over The Road also submitted the affidavit of Mr. Vigeant, which briefly describes the negotiations for insurance, *see* note 3, *supra.* His statements are somewhat more substantial than those contained in the affidavits of Mr. Ayres and Mr. McLaughlin–for example, Mr. Vigeant at least avers that he *communicated* his understanding of the insurance policy to

Transport's representatives. However, like Mr. Ayres and Mr. McLaughlin, Mr. Vigeant is not very specific. Therefore, while in light of the deficiencies in Transport's affidavits we might rely on Mr. Vigeant's affidavit to support the summary judgment motion, *cf. American International Insurance Co. v. Vessel SS Fortaleza,* 585 F.2d 22, 23 (1st Cir. 1978) ("movant's affidavit was adequate to support the granting of summary judgment in the absence of a counter-affidavit setting forth facts impugning those asserted by movant"), we prefer not to do so.

on a few occasions Transport provided the affiliated companies with a "Total Estimated Annual Premium," which included in one sum the combined premiums estimated due from all the companies insured under the Workmen's Compensation Policy, Transport treated each company separately in its actual billing practices. Each company paid its own premium. Transport's own bookkeeping maintained a strict separation between the financial accounts of each company. The calculation of each company's premium depended on the makeup of its own workforce and the states in which it operated. The retrospective standing of each company was calculated on the basis of its own loss experience.

Against this background, the language of the policy itself, which is at most ambiguous, cannot be read as creating joint liability for premium payments. Use of a singular "insured" in the policy is, for all that appears, wholly attributable to the limitations of the printed form which was designed, it seems, with a single insured in mind. The meaning of "and/or" is at best unclear. *See Employers' Mutual Liability Insurance Co. of Wisconsin v. Tollefsen*, 219 Wis. 434, 263 N.W. 376 (Wis.1935); *Vasilakis v. Haverhill*, 339 Mass. 97, 157 N.E.2d 871 (1959). Ill–suited as an expression of joint and several liability, it would not put insureds on notice that such a contract term was intended. An insurance company may not derive benefit from the use of such fuzzy words.

We hold, therefore, that Over The Road is liable under the Workmen's Compensation Policy only for those premiums attributable to the coverage of its own employees.[8] Given this conclusion, appellant's contention that the action should be dismissed for failure to join necessary and indispensible parties, *see* Fed.R.Civ.P. 19, has no merit. The rights and liabilities of Transport and Over The Road as between each other are separate and distinct from the rights and liabilities of the other affiliated companies, and thus may be adjudicated separately.

*Affirmed.*

---

8. Because of our disposition, we need not decide whether the district court erred in holding that Transport's failure to answer Over The Road's Request for Admissions constituted an alternative ground for entering summary judgment in favor of Over The Road.