SPENCER M. ALPAUGH ET AL., PLAINTIFFS IN ERROR, v. WILLIAM WOOD ET AL., DEFENDANTS IN ERROR.

1. A contract by the defendants to take entire charge of the manufacturing department of the pottery of the plaintiffs for a period of more than three years, is not confined to the manufacture of such ware as had previously been produced in the pottery, but will apply to the manufacture of whatever ware the parties may consent to make.

2. Such a contract bound the defendants to possess, and to exercise with reasonable care, that degree of knowledge and skill in the manufacture of pottery which was common to persons occupying such positions as the one they undertook to fill.

3. If the defendants, under such a contract, manufactured large quantities of a new ware for mercantile purposes, and the product was bad because of defects in the biscuit, the glazing and the firing, it would warrant a jury in finding that the manufacture had been entered upon without adequate experiment, or that the same degree of skill and care was not given to the larger production as was exercised in the experiments, and either inference would justify a verdict that the defendants were responsible.

4. Wherever an obligation is undertaken by two or more persons, the general presumption is that it is a joint and not a several obligation; and this presumption is strengthened when the promisors have undertaken to accomplish together a single result. Such presumption is not defeated by the fact that each promisor is to contribute separately to the entire result for which they bargain, and is entitled to a distinct interest under the contract, for which he would have a separate remedy.

On error to the Supreme Court.

The plaintiffs, Alpaugh and Magowan, brought suit in the Supreme Court against the defendants, Wood and Barlow, upon the following contract:

"Agreement made this seventh day of May, A. D. eighteen hundred and eighty-three, between Spencer M. Alpaugh and Frank A. Magowan, of the city of Trenton, New Jersey, party of the first part, and William Wood, of the township of Lawrence, and James Barlow, of the city of Trenton, in the county of Mercer and State of New Jersey, parties of the

second part. Witnesseth, that whereas, the said party of the first part own and operate a pottery manufactory in the city of Trenton, heretofore known as the pottery of Coxon and Company; and whereas, they have agreed to employ and have employed the said parties of the second part respectively, to superintend and manage the manufacturing part of the business of said pottery, including the decorating department; taking entire charge of the works, employment of hands and selection of materials; therefore, it is agreed between the said parties as follows:

"The said Alpaugh and Magowan have agreed, and by these presents do agree, to employ and do hereby employ the said William Wood and said James Barlow, to take the entire charge of the manufacturing department of their said pottery, including the decorating department, for the term of three years and two months from the date of this agreement. And the said parties of the second part do hereby agree to enter the employment of the said party of the first part as aforesaid, and to take the entire charge of the manufacturing department of said pottery, and to give their whole time, labor and skill towards the proper management of said business during the term aforesaid.

"And the said party of the first part do agree that the said parties of the second part shall receive for their said services during the said period the salary of three thousand dollars a year each, payable in weekly payments. And do further agree that said Wood and Barlow shall also have and be entitled to ten per cent. of the net profits of said business during said period. And said party of the first part do guarantee that said profits shall bring in to said party of the second part a sum of at least two thousand dollars a year to each of them; and said salary and profits to begin on the twenty-first day of May, eighteen hundred and eighty-three.

+ "It is further understood that James Barlow gives his + entire knowledge and services in modeling to Alpaugh & Magowan, and renders no service or knowledge to + anyone else. +

" In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

"SPENCER M. ALPAUGH,    [L. S.]
" "F. A. MAGOWAN,    [L. S.]
"WILLIAM WOOD,    [L. S.]
"JAMES BARLOW.    [L. S.]

" Signed, sealed and delivered in the presence of [+ clauses between marks thus + inserted before signing].

"GEO. R. COOK.

"TRENTON, N. J., May 7, '83."

The *gravamen* of the complaint is that the defendants did not exercise proper care and skill in the performance of their obligations, and that in consequence thereof losses were sustained by the plaintiffs.

At the trial of the cause in the Mercer Circuit, the plaintiffs produced evidence tending to show the following facts : that up to the date of the foregoing contract, there had been manufactured at the plaintiffs' pottery only the common grades of ware known as the white granite and the C. C., which were undecorated ; that very soon after the defendants took charge of the pottery they commenced the manufacture of a higher grade of ware, which was designated " Imperial " china ; that at first this ware was made in plain white, but within a few months they began to decorate it with colors printed and laid on outside of the glaze; that in the year 1884 they commenced to decorate with color placed under the glaze, directly upon the biscuit; that these several kinds of decorated ware, after being a short time in use, became badly crazed, chipped easily, and absorbed moisture and grease, because the body of the ware was soft and porous, the glazing was too light or too rich, and the goods had not been properly fired; that by reason of these defects a large part of the product of the pottery was unmerchantable; that the manufacture of these sorts of crockery was entered upon at the suggestion of the defendants, or one of them, and was conducted under their manage-

ment; that all of these classes of goods were designed for common use, in private families and in hotels; and that the kind which was decorated upon the biscuit had been successfully manufactured in a pottery in England, under the management of one of the defendants, while the other sorts were, both before and during the running of this contract, properly produced from other potteries in Trenton and elsewhere in the United States.

At the close of the plaintiffs' case, a non-suit was ordered by the trial judge, on the ground that the contract related only to those kinds of ware, white granite and C. C., which had been manufactured at the pottery prior to the making of the agreement.

Upon exception to this ruling, a writ of error was sued out from this court.

For the plaintiffs in error, *Garret D. W. Vroom* and *Barker Gummere.*

For the defendants in error, *Chauncy H. Beasley* and *James S. Aitkin.*

The opinion of the court was delivered by

DIXON, J.   The scope accorded by the trial judge to the contract in this case was too limited.   The mention, in the document, of an existing pottery was designed to indicate the place where the business provided for was to be conducted, and, in a general way, the business itself, as being that of a pottery, but there is lacking any intimation that the business was to be confined to such products as had previously been manufactured.   There are several reasons for thinking that the contract has a wider sweep.

*First.* It is reasonable to assume that, in making an arrangement which was to last over three years, for the charge and superintendence of a manufacturing enterprise, the parties contemplated the introduction of such improvements as were then or might thereafter be in common use in similar estab-

lishments. The opposite assumption would be unreasonable, for it implies that the parties were blind to the signs of progress everywhere apparent in manufacture, or were indifferent to the success of their undertaking.

*Secondly.* Prior to the making of this agreement, there was in the pottery (as we understand the evidence) no decorating department, the sole products, white granite and C. C. ware, being undecorated. But the contract expressly provides for such a department, to be under the charge of the defendants. The parties must then have intended to produce decorated ware, and so to advance beyond the previous manufacture.

*Lastly.* " The conduct of the parties has gone far to settle the true interpretation of the contract," using the words of Chancellor Green in *Burlew* v. *Hillman, 1 C. E. Gr. 27.* The contract related to the future management of the business of the plaintiffs' pottery. Extrinsic evidence disclosed that the previous business of that pottery had been more limited than the business to which the pottery was reasonably adapted, and thus a question is raised whether the parties bargained about a business of the narrower or of the wider range. This question, suggested by extrinsic evidence, may be answered by evidence of the same class. 2 *Pars. Cont.* *560 ; 2 *Phil. Ev.* *746 ; *Den.* v. *Cubberly,* 7 *Halst.* 313 ; *Jackson* v. *Perrine,* 6 *Vroom* 137. On this point the acts of the parties during the performance of the contract are persuasive testimony. It appears that throughout the period of their employment the defendants, with the assent of the plaintiffs, entered upon the manufacture of several kinds of pottery different from the white granite and C. C. ware, without any intimation from either side that such manufacture was not included in the contract, or that, by reason of it, the defendants, who had bound themselves to give their whole time, labor and skill to the contract business, were either failing to earn the compensation provided in the agreement or were earning any other compensation than that. It also appears that, after the termination of their employment, the defendants filed a bill in equity against the plaintiffs, claiming an account of all the business done in the pottery

during their term of service, under that clause of the contract entitling them to ten per cent. of the net profits of the business embraced in the agreement, and that this claim was not resisted, except on the ground that the defendants had failed to manage the business with due skill and care. On this bill the complainants obtained a decree for the account claimed. More unequivocal indications of the understanding of the parties, as to the subject matter of their contract, could scarcely be supposed. We are satisfied that the contract embraced the manufacture of any species of pottery in the production of which the parties might consent to engage.

Having thus ascertained the business which the defendants agreed to manage and superintend, we are next to consider what was their obligation with regard to the management, and whether there was evidence tending to prove a failure to meet such obligation.

The defendants bound themselves to possess and to exercise, with reasonable care, that degree of knowledge and skill, in the manufacture of pottery, which was common to persons occupying such positions as the one they undertook to fill. *Alpaugh* v. *Wood*, 18 *Stew. Eq.* 156.

This probably would not bind them to the successful manufacture of every species of pottery, but it certainly would not be unreasonable or illegal for a jury to conclude that it bound them sufficiently to test each contemplated manufacture by experiment on a small scale before incurring the cost of turning out large quantities of the product for mercantile purposes.

The evidence adduced below by the plaintiffs was to the effect that, in many instances, after experiments which the defendants declared to be satisfactory, the merchandise manufactured by the defendants was so defective, in the biscuit, the glazing and the firing, as to be almost worthless. This evidence would warrant an inference that the experiments were inadequate, or else that the same skill and care employed in the experiments were not given to the larger production; and either conclusion might lead the jury to a verdict for the plaintiffs.

We therefore think that the non-suit upon the ground assigned at the trial was wrong.

It is urged by the defendants that the obligations imposed upon them by this contract are not joint but several only.

Wherever an obligation is undertaken by two or more persons, it is the general presumption of the law that it is a joint obligation. Words of express joinder are not necessary for this purpose; but, on the other hand, there should be words of severance, in order to create a several responsibility. 1 *Pars. Cont.* \*11; *Chit. Cont.* 128. This presumption is corroborated when the promisors have undertaken to accomplish together a single result, for in such cases the promisee evidently relies upon a joint performance. The inference of a joint obligation is not defeated by the fact that it appears, either in the terms of the contract or from the circumstances of the transaction, that each promisor is to contribute separately to the entire result for which they bargain. *Byers* v. *Doby*, 1 *H. Bl.* 236; *Muzzy* v. *Whitney*, 10 *Johns.* 226; *Field* v. *Runk*, 2 *Zab.* 525. Nor is the nature of the obligation, with respect to its being joint or several, to be determined by considering whether the remedies of the same parties under the contract would be joint or several; for their remedies depend largely, if not wholly, on the nature of their interest, from which, of course, their liability is entirely distinct. 1 *Pars. Cont.* \*13.

Under these principles it is clear that the obligation of the defendants now in suit is joint. They are joined as the parties of the second part in the agreement; together they covenant to enter the employment of the party of the first part, to take the entire charge of the manufacturing department of the pottery, and to give their whole time, labor and skill towards the proper management of the business. This covenant does not assign to each of the defendants his several duties, nor require from either the exercise of skill and diligence in any special department of the work, but binds both to the due management of the entire manufacturing business, leaving them to divide the charge between themselves, according to

their own discretion, and holding them responsible, not each for what he may arrange with his partner severally to assume, but both for the result to be jointly accomplished—the skillful and careful management of the pottery. Even the last clause of the contract, which secures to the plaintiffs exclusively the knowledge and services of the defendant Barlow in modeling, is not cast in the form of a separate covenant by Barlow, but is expressed only as a part of the understanding agreed upon by the parties, viz., by the plaintiffs on the one part and the defendants on the other. But even if this clause should be construed as Barlow's separate covenant, and as not involving Wood in responsibility for modeling, that would not affect the present question, for the plaintiffs' case does not rest upon defective modeling, or at least not upon that alone.

The judgment of non-suit should be reversed, and the record remitted for a *venire de novo.*

*For affirmance*—None.

*For reversal*—The Chancellor, Depue, Dixon, Knapp, Magie, Reed, Scudder, Van Syckel, Brown, Clement, Smith, Whitaker. 12.