R. J. SHURTLEFF ET AL. *v.* L. C. UDALL.

May Term, 1922.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 3, 1923.

*Contracts—Recovery Under Joint Obligation—Presumption as to Being Joint Obligation—Test Respecting Contract Being Joint or Several—Jury Question—Motion Non Obstante Veredicto.*

1.   Where the defendant, by his contract, had promised to pay plaintiffs jointly a certain price for all pulp wood received and accepted thereunder during a certain period, in an action on such contract it was error to limit recovery to pulp wood jointly owned by plaintiffs.

2.   Whenever an obligation is undertaken by two or more, or a right is given to two or more, it is the general presumption of law that it is a joint obligation or right.

3.   As a general rule all contracts are joint, where the interest therein of the parties for whose benefit they are created is joint, and separate where that interest is separate; the interest referred to being the strictly legal and technical interest created

by the contract, not the interest in the sum of money or other benefit to be received from it, and not depending upon the condition or state of the parties aside from the contract.

4.  In an action based on a promise made to plaintiffs jointly by defendant to pay plaintiffs a certain price for all pulp wood received and accepted under their contract during a certain period, whether the plaintiffs were jointly interested in wood purchased by one of them and delivered to the defendant, *held* to be a question for the jury.

5.  A common law motion for judgment *non obstante veredicto* raises only a question of pleading, reaching nothing outside the record, and cannot be treated as a motion for a directed verdict.

ACTION OF CONTRACT. Plea, the general issue. Trial by jury at the December Term, 1921, Caledonia County, *Willcox,* J., presiding. Verdict and judgment for the plaintiffs for a portion of their claim. Plaintiff's motion *non obstante veredicto* overruled. The plaintiff excepted. The opinion states the case. *Reversed and remanded.*

*Porter, Witters & Longmoore* for the plaintiffs.

*F. G. Fleetwood* and *W. A. Dutton* for the defendants.

TAYLOR, J. The plaintiffs seek to recover a balance claimed to be due from the defendant under a contract for the sale of certain pulp wood. Prior to the date of the contract they had owned jointly a farm in Walden which they had sold to one Robbins, taking a mortgage back for $2,000 to secure a part of the purchase money. By agreement between the plaintiffs and Robbins the latter was to cut from the farm and deliver on the cars 100 cords of peeled pulp for which he was to receive $20 per cord to apply on the mortgage, and the plaintiffs had the right to cut an additional 100 cords of pulp wood at an agreed price per cord for stumpage. This arrangement was known to the defendant before his contract with the plaintiffs was executed. The contract in question was in writing and bore date October 2, 1920. The plaintiffs individually are described as one of the parties thereto. In terms the plaintiffs agree to sell and deliver

to the defendant "all of the pulp wood they may have for sale during the year 1920 and 1921.

75 to 100 cords of peeled spruce and fir, at $24.00 per cord, f. o. b. Dow's or Greensboro Bend, May 1st.

50 to 200 cords of unpeeled spruce and fir, at $19.00 per cord, f. o. b. Dow's or Greensboro Bend."

After specifying how the wood was to be prepared and its quality and size, the contract continues: "The wood to be delivered f. o. b. cars and billed to my order during the season 19— and 19—. The party of the second part agrees to pay to the party of the first part, on or before the 25th of each month for all wood received and accepted during the previous month prepared, delivered and surveyed according to the terms of this contract."

It appeared in evidence that the defendant was a somewhat extensive dealer in pulp wood which he purchased for shipment to various mills; and that at the time the contract was executed the plaintiffs had no other pulp wood than that to be cut from the Robbins' farm, so-called, under the agreement with Robbins mentioned above. Before May 1, 1921, thirteen carloads of pulp wood were delivered on board the cars and accepted by the defendant. It was all shipped billed in the names of the plaintiffs jointly, to consignees directed by the defendant. The bills of lading were delivered to the defendant and were forwarded by him to the consignees. In addition to wood thus received by the defendant, sufficient peeled pulp to make another carload was on the ground at Dow's station ready to be loaded. One of the issues at the trial was whether this wood was delivered before May 1. The jury have found that this wood was ready for shipment within the time specified and was not loaded pursuant to the defendant's directions.

The defendant conceded that all of the pulp wood answered the requirements of the contract. His claim was that a portion of the wood was not owned by the plaintiffs jointly but was the individual property of Shurtleff, which was not received under the contract and for which a recovery could not be had in this action. Before the suit was brought he had paid the plaintiffs by checks drawn to them jointly $1,876.47 which covered six carloads then understood by him to be all of the wood received that came from the Robbins' farm. He sent Shurtleff a check drawn

to him personally for the remainder of the wood which he had received, valued at the market price of such wood when delivered. This check was returned unused. Aside from the question respecting delivery referred to above, the only issue at the trial below was whether the wood not paid for was covered by the contract. During the trial the defendant conceded that two of the carloads sued for and the wood at Dow's that had not been loaded came from the Robbins' farm and was owned by the plaintiffs jointly.

The questions presented by certain exceptions that are relied upon can be better understood by tracing briefly their development in the course of the trial. Shurtleff had testified that the remaining five carloads were purchased by him elsewhere after the contract was executed to take the place of wood not cut on the Robbins' farm; that when the contract was entered into some of the Robbins' wood was cut and peeled but wasn't cut into four-foot lengths until afterwards, "so we didn't know how much we had." Thereupon the defendant advanced the claim that the contract was a joint contract, that it related only to the wood that the plaintiffs owned or might handle jointly during the time specified, and that Goodrich had no interest in the wood that was bought outside. The court excluded "this line of inquiry" and indicated that the plaintiffs would be held to a recovery for such wood as they owned jointly, and that it should exclude from the consideration of the jury any wood not jointly owned, though shipped under the contract. To this the plaintiffs were allowed an exception. Following this the plaintiffs' evidence showed without contradiction that the defendant had no contract relating to pulp wood with Shurtleff personally; that Goodrich entrusted the entire management of the pulp wood business to Shurtleff; and that by an express understanding between them Shurtleff had full charge of the transaction with the defendant. It was then offered to show that the outside wood was purchased and shipped pursuant to that arrangement. Objection was interposed to any evidence of what Shurtleff did in this regard unless authority from Goodrich to go outside the business relating to the Robbins' farm first appeared. During a somewhat extended discussion the court first ruled that, as the evidence stood, the arrangement testified to by Shurtleff had to do with the wood on the Robbins' farm and that in the present

situation it should have to exclude any inquiry as to authority in respect to any other pulp, to which the plaintiffs were allowed an exception. It was later ruled ''It is necessary for you to first establish by conclusive proof (afterwards changed to satisfactory proof) that Mr. Goodrich assented to that proposition and until you can establish that we shall exclude any testimony in respect to any other wood.—There is no proof now as the court sees it.'' To these rulings the plaintiffs had an exception. Subsequently, it was shown, and not contradicted, that Goodrich knew Shurtleff was buying the outside wood, that he was using ''joint money'' for that purpose, and that he made no objection. Thereupon the pending question and offer were renewed and again excluded, the court holding that the proof as to authority ''does not comply with the law.'' To this ruling the plaintiffs excepted. As indicating wherein the court regarded the proof of authority as being short, our attention is called to the following statement made during the discussion: ''You can't show it by this witness (Shurtleff) in the method you have been offering to show it. He can't testify in his favor at this time to establish this relationship. It must be shown by some other way.'' Later counsel for the defendant indorsed this view by objecting to the testimony of Shurtleff tending to show authority from Goodrich ''on the ground that such testimony is self-serving, and the agency cannot be established in that way.'' Plaintiffs brief this group of exceptions as an exception to the refusal of the court to permit them to show that Shurtleff bought the pulp wood shipped to the defendant with the firm's money. But as seen, that was not the point of the exceptions, and the plaintiffs have by their brief limited the review to a claim that is untenable.

In addition to what already appears plaintiffs' evidence tended to show that the profits of the pulp wood deal were shared equally, but that there was no arrangement as to the division of losses. It also appeared that the proceeds of the checks sent the plaintiffs jointly had been divided equally between them. At the close of the plaintiffs' opening case the court indicated that the only question it would submit to the jury was whether the plaintiffs ought to recover pay for the wood at Dow's station. Plaintiffs insisted that they were entitled to recover their entire claim and to go to the jury on their claim for outside wood. The

court announced that it would hold and so instruct the jury that
they should not take into consideration the wood purchased
outside the Robbins' farm. The plaintiffs saved an exception to
this ruling. As indicated, the court charged the jury not to
consider in arriving at their verdict anything relating to the
outside wood, thus limiting the recovery to the wood cut on the
Robbins' farm. They were instructed to return a verdict for the
plaintiffs for the two carloads as to which the defendant had
conceded liability, and in addition for the wood at Dow's, if
they found it was seasonably offered for shipment. The plain-
tiffs excepted to the charge limiting the recovery and to the
failure of the court to submit the question of liability for all
the pulp wood shipped to the defendant. Counsel insisted that
it was a question for the jury and stated that the exceptions
were taken for the purpose of saving ''the question which we
have considered,'' meaning doubtless the question considered
when the court defined the issue at the close of the plaintiffs'
evidence.

[1-3]    In excluding from consideration the wood purchased
outside of the Robbins' farm the court in effect held as a matter
of law that it was not shown to be proper subject-matter for re-
covery under the contract. The theory on which the ruling was
based was that recovery could be had in this action only for
wood that was jointly owned by the plaintiffs, and that on the
evidence Shurtleff owned the outside wood individually. This
ruling was less favorable to the plaintiffs than the defendant
tacitly admitted in stating his claim, in that it excluded from
consideration wood that the plaintiffs may have handled jointly
—in other words, in which they may have been jointly inter-
ested. The defendant's argument in support of the ruling as-
sumes that the outside wood was the individual property of
Shurtleff in which Goodrich never had any interest. It does
not necessarily follow that recovery therefor could not be had
in this action. The foundation of the suit, which is brought on
the contract, is the defendant's promise to pay contained there-
in—a promise to pay the plaintiffs jointly for all wood received
and accepted under the contract. The rule of construction is
that whenever an obligation is undertaken by two or more, or a
right is given to two or more, it is the general presumption of
law that it is a joint obligation or right. 1 Parsons on Cont. 11,

11

and cases there cited. It is said by Baron Parke in *Keightly* v. *Watson,* 3 Exch. 716, ''If words capable of two constructions are used, the interests of the parties which they intended to protect must be looked to, and the words are to be construed according to that interest.'' Language of similar import was used by Judge Redfield in *Sharp* v. *Conkling,* 16 Vt. 355. As a general rule all contracts are joint, where the interest therein of the parties for whose benefit they are created is joint, and separate where that interest is separate. See *Anderson* v. *Nichols,* 93 Vt. 262, 107 Atl. 116. But it would seem that the interest which is thus important as a criterion is an interest in the contract and not in the sum of money or other benefit to be received from it; that it is a strictly legal and technical interest created by the contract and does not depend upon the condition or state of the parties aside from the contract. 1 Parsons on Cont. 14. See *Catlin* v. *Barnard,* 1 Aikens 9; *Bowman* v. *Bailey,* 10 Vt. 165. In *English* v. *Blundell,* 8 C. & P. 337, 34 E. C. L. 763, by a contract under seal three persons agreed to purchase a mine and a certain sum was to be paid as a deposit to be returned ''to the said purchasers,'' should the property on inspection prove to have been misrepresented. Under a subsequent agreement between the purchasers one of them paid the deposit. It was held that if the deposit was recoverable back it must be by all the purchasers in an action of covenant, and that the one making the payment could not maintain an action for money had and received. *Alpaugh* v. *Wood,* 53 N. J. Law, 638, 23 Atl. 261, is to the same effect. The subject is treated in an extended note found in 1 Parsons on Cont. 14-25, and in 20 R. C. L. 673.

[4] It is evident that the promise on which the suit was brought is joint. It will also be seen that the real issue respecting the outside wood is whether it was delivered and. accepted under the contract. The course of the trial was such that this issue seems to have been lost sight of, while attention was given to the false issue whether Goodrich had a beneficial interest in the money sought to be recovered for such wood. But treating the issue as it was treated at the trial, the rulings excepted to cannot be sustained. The contract was not limited to the wood purchased by the plaintiffs from Robbins, but could be filled by the delivery of wood procured by them elsewhere. That it contemplated other wood than that which the plaintiffs then owned

or for which they had cutting rights on the Robbins' farm is indicated by the maximum quantity of wood which the plaintiffs agreed to sell. The agreement was to sell and deliver to the defendant all the pulp wood they might have for sale during a time specified. By necessary implication the defendant agreed to take all of the pulp wood the plaintiffs had to sell during the same time, of the kind and quality specified, at least to the maximum quantities fixed by the contract. But it does not follow that the contract would extend .to wood in which the plaintiffs were not jointly interested; or in other words, that the individual plaintiffs would be able to bring within the contract a subject-matter in which the other had no interest. We think it should be held that the evidence viewed in the light most favorable to the plaintiffs made it a jury question whether Goodrich was jointly interested with Shurtleff in the outside wood. The unpaid balance sued for was the product of an undertaking in which they were jointly interested. They had contracted to sell a minimum quantity of pulp wood in excess of what it later developed was readily available at the Robbins' farm. To make up the deficiency Shurtleff, who had the entire management of the enterprise, purchased the outside wood with joint funds, shipped it as joint property, it was received by the defendant, who had no individual contract with either of the plaintiffs with knowledge that it was so shipped and, so far as appears, without objection that it was not within the contract until after it had expired by its limitation. Goodrich knew what was being done and made no objection. The plaintiffs were to share equally in the profits of the transaction with the defendant. The fact that there was no agreement between the plaintiffs in respect to losses might bear on the question of a partnership between them, which was an issue in the case, but it would not conclude the claim on which the plaintiffs finally relied. Much is made in the defendant's brief of Shurtleff's choice of pronouns in referring to the purchase of wood on and outside of the Robbins' farm. The argument would have some force when addressed to the jury, but lacks the conclusive effect claimed for it. It is significant that counsel do not now claim anything from the fact that express assent on Goodrich's part to the purchase of the outside wood was not shown. It is enough that the evidence afforded a sufficient basis for the inference. It is claimed that the outside

wood was not paid for with joint funds but by Shurtleff individually; but the claim is not fully borne out by the evidence. Checks drawn to the plaintiffs jointly aggregating $800 were used by Shurtleff in the purchase of this wood. Some time later, and after defendant's position became known, the plaintiffs received a check for the balance that the defendant then recognized as due on the Robbins' wood. Under some arrangement—what does not appear—Shurtleff received from the proceeds of this check a sum which, added to the amount previously received and paid out as stated above, equalled one-half of the total payments on account of the wood from the Robbins' farm. While he may thus have assumed the expense of the outside wood, it still remains that it was originally purchased with joint funds and this arrangement between the plaintiffs did not change the joint nature of the transaction, so far as it concerned the defendant. It affected their comparative interests in the benefits of the contract, but would not defeat a joint recovery.

[5] After verdict and before judgment the plaintiffs filed a motion for judgment *non obstante veredicto,* for that as matter of law upon the undisputed evidence they were entitled to judgment for that sum. They rely upon an exception saved to the overruling of this motion. The position taken by the plaintiffs at the close of the evidence was inconsistent with that taken by the motion. As already seen, they were then claiming that they were entitled to go to the jury on their claim for the outside wood, and confined their motion for a directed verdict to the three cars sued for that came from the Robbins' farm. The motion for judgment could not be entertained as a common law motion for judgment *non obstante,* for such a motion reaches nothing outside the record; or, in other words, raises only a question of pleading. *Harrington* v. *Rutland R. R. Co.,* 89 Vt. 112, 94 Atl. 431; *Stearn* v. *Clifford,* 62 Vt. 92, 18 Atl. 1045. We have no statute, nor rule of court, if it could be so accomplished, permitting such a procedure. It could not be treated as a motion for a directed verdict, for it came too late to function as such. *Tarbell* ·v. *Grand Trunk Ry. Co.,* 94 Vt. 449, 111 Atl. 567. The case at bar is unlike the Harrington case, where the undisputed facts and those found by a special verdict defeated the plaintiff's right of recovery. It is in some

respects like the Tarbell case, where the court reserved for consideration the defendant's motion for a directed verdict, took the verdict of the jury, which was for the plaintiff, and later set the verdict aside and rendered judgment for the defendant. The theory on which such procedure was held permissible was that when the evidence viewed in the light most favorable to the plaintiff shows that he has no cause of action, judgment should be for the defendant. Here the plaintiffs are asking on review for a judgment on the undisputed evidence which, if granted, would cut off the discretion exercised by the court of granting a new trial when it is made to appear that the defeated party could probably make a better case on a retrial.

It was said in *Montpelier & Wells River R. R. Co.* v. *Macchi*, 74 Vt. 403, 52 Atl. 960, concerning a similar motion, that it was inappropriate in any view of the case. However, it is unnecessary to decide whether the motion is permissible in the circumstances, for in any event the evidence on the vital issue in the case was conflicting, the defendant having testified that the outside wood was not received under the contract, and the plaintiff's evidence lacked the conclusive effect necessarily claimed for it.

*Reversed and remanded.*

MILES, J., having retired, took no part in the disposition of the case.