Margaret G. Autran,
Admx.,
vs. } No. 64386.
Mary T. Cass, et al.

July 22, 1931.

CHURCHILL, J. Heard, jury trial waived.

The plaintiff is seeking to recover in this action damages for an alleged breach of a contract to compromise certain litigation.

The plaintiff is suing as administratrix of the estate of John F. Autran. She alleges in substance in her declaration that prior to May 22, 1923, there was pending a bill in equity, brought by the plaintiff, to reach property of John F. Autran in the hands of the defendants, individually and as trustees of certain land companies, and that there were also pending actions by the plaintiff against Mary T. Cass and Annie M. Autran to recover the sum of $50,000.00 as the amount of alleged loans made by John F. Autran to the respective defendants. It is further set forth that Mary T. Cass and Annie M. Autran, both individually and as trustees, agreed jointly and severally, in consideration that the said proceedings should be stayed and not prosecuted, to pay the plaintiff the sum of $2,000.00 in cash and $3,000.00 in promissory notes, both cash and notes to be paid in installments, the last note being payable on July 1, 1926; and in addition to pay the claim of Dr. John W. Keefe amounting to

$1,147.55 and the amount of an undertaker's bill against the estate of John F. Autran.

The breach alleged is that the defendants did not deliver the notes or pay the amount agreed to be paid. That the obligation, if it existed, has been breached is not disputed.

The defense insisted on by both defendants was that no such contract was ever entered into on the part of the defendants.

Prior to May 22, 1923, the defendants Autran and Cass were trustees of two land trusts, the Eastern Land Trust and the City and Suburban Land Trust. These trusts dealt in real estate. On the death of John F. Autran, his widow and administratrix filed a bill in equity against Annie M. Autran, individually and as trustee of the Eastern Land Trust and as trustee of the City and Suburban Land Trust, against Martin V. Cass, individually and as trustee of the City and Suburban Land Trust, and against Mary T. Cass, individually and as trustee of both of the above mentioned trusts. The bill claimed that a large interest in said trusts belonged in fact to John F. Autran and prayed for an accounting against the respondents, both individually and as trustees.

There were also pending three separate suits at law brought by the same plaintiff against the three respondents Autran, Cass and Martin V. Cass to recover money alleged to have been loaned to the respective defendants by John F. Autran.

In addition there was also pending a suit in the Superior Court for alienation of affections brought by Margaret G. Autran against Mary T. Cass.

Both Mary T. Cass and Annie M. Autran were in 1923 trustees of the two land trusts and were beneficially interested therein and together controlled both organizations. It is undisputed that the pending litigation was having a most serious effect on the business of the two trusts. Both defendants Autran and Cass were directly interested both individually and as trustees in the pending litigation.

The bill in equity was on for hearing on its merits on May 22, 1923, before the Superior Court. The hearing was postponed and on the same date a conference was held in the office of Peter C. Cannon, counsel for the complainant. All the parties to the bill were represented by counsel at this conference. Daniel H. Morrissey, counsel for Annie M. Autran, individually and as trustee, made the following offer in writing at the conference:

"As a matter of compromise, without prejudice, Annie M. Autran agrees to pay to Margaret G. Autran, Administratrix of the Estate of John F. Autran, in full settlement of all the claims of said Estate against said Annie M. Autran, Mary T. Cass, Eastern Land Trust, City and Suburban Land Trust or any other claims or suits or actions based upon any alleged claims or rights of said estate or of Margaret G. Autran or the heirs of the Estate of John F. Autran against Annie M. Autran and Mary T. Cass, individually or as Trustees of the Eastern Land Trust or City and Suburban Land Trust or against any other parties interested in said trusts,—the following sums of money and to give the following notes:

Cash to be paid July 1, 1923. $500.00
Cash to be paid Aug. 1, 1923.   500.00
Cash to be paid Oct. 1, 1923. 1000.00
Notes signed by Eastern
Land Trust and endorsed by
Annie M. Autran and Mary
T. Cass, payable $1000.00 on
July 1, 1924, July 1, 1925,
July 1, 1926................ 3000.00
                           _____
                            $5000.00

Upon acceptance of said money and notes all litigation between

above parties to be settled and releases exchanged.

Annie M. Autran<br>
By her Attorney<br>
Daniel H. Morrissey."

This offer was not accepted by the plaintiff, but after a conference the next day with his client, Mr. Cannon advised Mr. Morrissey that Mrs. Margaret G. Autran would accept the offer provided Annie M. Autran and Mary T. Cass paid the bill of Dr. Keefe amounting to $1148.55 and the amount of the undertaker's bill against the estate of John F. Autran.

Mary T. Cass went to the office of Mr. Cannon on the 18th or 19th of June, 1923, in regard to the settlement of a claim which Mr. Cannon was prosecuting on behalf of Miss Elizabeth Cafferty. In the course of the interview the matter of the proposed settlement of the Autran-Cass litigation was broached. Miss Cass stated that she knew of the offer made by Mr. Morrissey. Mr. Cannon then said that Mrs. Autran, the plaintiff, would accept the offer provided that she, Miss Cass, and Miss Autran would pay "the amount of Dr. Keefe's bill of $1147.55 and the undertaker's bill of $610.00. Miss Cass said she was willing to assume the responsibility for the doctor's bill and the undertaker's bill and that she had talked the matter over with Miss Autran. The substance of the conversation is given by Mr. Peter L. Cannon thus: "Well, the counter-offer was satisfactory to her, Miss Cass, and satisfactory to the land trust. She said the business was being jeopardized and she was very anxious to get it out of the way."

It may be pointed out here that the Cafferty case was dealt with directly between Miss Cass and Mr. Cannon without the active intervention of counsel, and that from about this time on Daniel H. Morrissey does not appear to have been actively engaged in any negotiations in the Autran-Cass litigation or the settlement thereof.

Within a few days Miss Cass again came to the office of Mr. Cannon with Miss Autran. The Autran-Cass litigation was discussed by Mr. Cannon and Miss Autran. He told Miss Autran that Miss Cass had indicated that she was willing, and that the land trust was willing, to settle the case on the basis of paying $5,000 and assuming the responsibility for the claims of Dr. Keefe and the undertaker. Miss Autran said that she was satisfied, too, and was willing to settle on that basis; that she was pleased it was going to be settled as it had been a terrible trouble to her and she was well pleased. Both of these conversations were testified to by Mr. Peter Leo Cannon, son of Mr. Peter C. Cannon, who was present on both occasions. He puts the date of the interview as June 21, 1923.

Both defendants deny that any such settlement or agreement was arrived at, but both admit that they were together at the office of Mr. Cannon the latter part of June.

In corroboration of her claim, the plaintiff introduced a series of documents consisting of an account kept by Mr. Cannon, letters written by him to Mr. Morrissey and to Miss Cass and Miss Autran, and to Mr. Lawrence Hogan, afterwards attorney for Miss Cass, a receipt given by Mr. Cannon, and letters written by Mr. Lawrence Hogan, counsel for Miss Cass, and by both Miss Cass and Miss Autran.

The payments made to Mr. Cannon and the correspondence relative thereto are facts of a probative character in corroboration of the claim of the plaintiff if it can be said that such payments were made on account of the alleged agreement to compromise the pending litigation.

On June 29, 1923, Mr. Cannon sent a letter to Mr. Morrissey suggesting that the first payment under the compromise agreement would be due on

July 1, 1923. Mr. Morrissey testified that he never received the letter. Miss Cass came to the office of Mr. Cannon on July 2, 1923, (July 1 falling on Sunday). She made a payment of $100.00 and Mr. Peter Leo Cannon, who was present, testified that it was made in the form of a check for $64.00 and $36.00 in cash. She stated she would have the balance of the first payment of $500.00 in a few days. She requested a receipt be given, made out to Miss Autran, which was done by Peter C. Cannon. This receipt was put in evidence. It bears date of July 2, 1923. On the next day Mr. Peter C. Cannon opened an account which was entitled: *"Autran vs. Cass et al., eq. settlement account."* This account, on two sheets, was kept in the file of the case in Mr. Peter C. Cannon's office and is in his handwriting. The first entry is as follows: "July 3, from Mary T. Cass $100.00." Mr. Peter Leo Cannon thought the entry was made on July 3 for the reason that his father desired to ascertain whether or not the check was good before making the entry. From that time on a number of payments were made by either Miss Autran or Miss Cass, Miss Cass making by far the greater number of the two. A number of payments were made by the land trusts.

A total amount of $610.00 was paid in this manner, the last payment being made on December 17, 1924.

Certain letters written either by Miss Cass or by her counsel have a pertinent bearing on the question as to whether an agreement to compromise came into existence.

On December 20, 1923, Miss Cass wrote to Mr. Cannon as follows:

"Enclosed you will please find $25.00 to apply on the Autran matter. I will make up the payments in a few days."

November 6, 1924, Mr. Lawrence Hogan, as counsel for Miss Cass, wrote to Mr. Cannon as follows:

"We desire to hand you herewith our check in the sum of $10.00, the same being payment by Miss Cass for Miss Autran. Miss Cass tells us she will endeavor to do this much each week on the matter."

On November 28, 1924, he wrote as follows:

"We hand you herewith our check in the sum of $10.00 being a payment by Miss Cass on the Autran matter."

On December 16, 1924, he wrote as follows:

"We hand you herewith our check in the sum of $10.00, being a payment by Miss Cass on the Autran matter."

Each defendant took a position inconsistent with the other in respect to these payments as will afterwards be pointed out, but both agreed on the point in respect to the receipt of July 2, 1923. Both disclaimed knowledge of it. However, it was found in the files of one of the land trusts of which Miss Autran was an official. According to Miss Cass, Miss Autran had charge of the records and documents in the office. Unless this document went through the hands of either Miss Cass or Miss Autran, its presence in the files of the land trust can not be accounted for.

Miss Cass claimed that $100.00 was paid on behalf of the Cafferty claim, but it appeared from the testimony of Mr. Peter Leo Cannon, who had the Cafferty claim in his personal charge, that on July 2 no payment was made on that claim.

Miss Cass admitted that the greater part of the money paid to Mr. Cannon, as shown by his account, was paid on account of the Autran-Cass litigation and was paid from the funds of the two trusts; that she had an arrangement whereby the trusts were to loan the money to Miss Autran so that she could make the payments to Mr. Cannon. She admitted that the payments were connected with the Autran-Cass litigation, but said that this was done

(i. e. the payments were made) "While the matter was being threshed out about the doctor's bill and the undertaker's bill," and "we expected they would be able to compromise on these bills and have the agreement finally carried out."

Her testimony in this respect is equivocal. Whether she meant that an actual agreement in settlement had been reached and they were endeavoring to settle the amount of the two bills, or whether the whole matter of settlement was in suspense pending these negotiations, is left in doubt. That the payments were made on account of the Autran-Cass litigation is not in doubt on her testimony. She further admitted that one payment, that of December 20, 1923, was made personally by her to apply on the Autran matter.

Miss Autran, on the other hand, denied that payments made on or after July 2, 1923, had any connection with the Autran-Cass litigation or that any payments made by Miss Cass or by anyone else to Mr. Cannon were authorized by her. She denied that a letter to Mr. Cannon bearing her typewritten signature, reciting that a check for $25.00 was enclosed, was either written or authorized by her. She accounts for the payments made by saying that as far as she knew they were mere gratuities paid on account of the importunities of Mr. Cannon on behalf of the impoverished wife and children of her brother, John F. Autran, and not because of any legal obligation on her part to pay. She points to a series of payments of this character made by her to Mrs. Autran, but admitted that the last payment so made was on May 13, 1922; that is, more than a year prior to the time when the alleged compromise agreement was made.

This conflict between the two defendants obviously weakens the defence.

Both positions can not be true and each is left open to doubt.

Taking the testimony of the letters admitted to have been written by Miss Cass and the payments admitted to have been made, together with other testimony in the case that these payments were made in connection with the Autran-Cass litigation, it is evident, and the Court so finds, that the defendants Autran and Cass paid, or caused to be paid, to Mr. Cannon for the plaintiff sums of money between July 2, 1923, and December 17, 1924, and that these payments were made in performance of an agreement between Miss Cass, Miss Autran and the plaintiff, to stay the pending litigation.

What was the character of the agreement and what were its terms?

It is claimed on behalf of the plaintiff that it was a joint and several obligation which was entered into.

"A joint agreement is an agreement by all that the act promised shall be done. The act promised by the terms of the promise may be performable by any one of the promisors, sometimes by only one of them, sometimes it may require the action of all the promisors and sometimes it may be performable only by a third person."

1 Williston on Contracts, Pages 601-602. Sec. 316;

Alpaugh vs. Wood, 53 N. J. Law 638, 23 Atl. 261;

Walter vs. Rafalsky, 113 App. Div. 223, Affirmed 186 N. Y. 543.

The character of the claims pending, the terms of the offer of May 23, 1923, the conversations between Mr. Peter C. Cannon and the defendants in June, 1923, and the transactions between the parties thereafter must be considered.

Claims in the shape of pending suits existed against each of the defendants personally and they were vitally interested in the suit against the trust of which they were trustees and personally interested.

The promise of payment of the bills of Dr. Keefe and the undertaker was a joint promise of Autran and Cass on the testimony of Mr. Peter Leo Cannon, which the Court takes as trustworthy.

The undertaking to give notes of the Eastern Land Trust has the aspect of a joint promise for the reason that the trust was under the control of the defendants and neither of them alone was in a position to make effectually a promise to issue the notes of the trust. Moreover the trust considered as an entity was a respondent in a bill in equity pending, and its business was seriously jeopardized by the litigation.

It is true that the offer of May 22, 1923, on its face and standing alone purports to be the offer of Annie M. Autran, but the agreement on which suit is brought is the agreement of June 21, 1923, which is an oral agreement, the terms of which must be gathered not only from the offer of May 22, 1923, but also from what was said by the parties, and in the light of their acts subsequent to June 21, 1923. The entire transaction must be explored to ascertain the intent of the parties.

Taking into consideration the testimony of Mr. Peter Leo Cannon as to the conversations on June 18, 19 and 21, 1923, the fact that Mary T. Cass personally paid from her own funds (which the Court finds to be a fact) a part of the initial payment of July 2, 1923, and the other facts as shown by her letters and subsequent payments, the Court finds as a fact that there was a joint agreement entered into on the part of Annie M. Autran and Mary T. Cass to pay the sum of $5,000.00 in installments of cash and notes and the bills of Dr. Keefe and the undertaker.

The entire transaction further shows that it was the intention of the parties on both sides to have the obligation not only joint but joint and several.

*Morrison* vs. *American Surety Co.*, 73 Atl. 10 (Pa. 1909).

The plaintiff has performed her part of the contract. All litigation in which she is plaintiff against Annie M. Autran, Mary T. Cass and Martin V. Cass, or against either the Eastern Land Trust or the City and Suburban Land Trust has been stayed from June 21, 1923, until the present time, and no proceedings have been had in any of these cases since that date, and the defendants individually and as trustees have had the benefit of the consideration.

Taking all the germane testimony into consideration, the Court finds that on or about June 21, 1923, the defendants Annie M. Autran and Mary T. Cass, for a valuable consideration, agreed individually and jointly and severally that they would pay the plaintiff $500.00 in cash on July 1, 1923, $500.00 in cash on August 1, 1923, $1,000.00 in cash on October 1, 1923, and that they would give the plaintiff a note for $1,000.00 payable on July 1, 1924, a note for $1,000.00 payable on July 1, 1925, and a note for $1,000.00 payable on July 1, 1926; and for the same consideration jointly and severally agreed to pay the claim of Dr. John W. Keefe against the estate of John F. Autran amounting to $1,147.55, and the undertaking expenses incurred in the burial of John F. Autran; and the Court further finds that Mary T. Cass did not agree as a surety but agreed to pay in consideration of the staying of suits against herself personally and as trustee.

Did the defendants agree as trustees?

This becomes a pertinent issue. Under some circumstances the creditor may look to the estate.

*Wadsworth, Howland & Co.* vs. *Arnold*, 24 R. I. 32.

And is also pertinent under the opinion of the Supreme Court in

*Autran* vs. *Cass*, 51 R. I. 198.

On June 21, 1923, and prior thereto,

both defendants were trustees of the Eastern Land Trust, and together with Martin V. Cass constituted the board of trustees of the City and Suburban Land Trust.

Both trusts were interested in the pending litigation. It was, on the testimony of Mr. Peter Leo Cannon, which the Court accepts, the intention of the parties to the agreement of June 21, 1923, to have the defendants bound as trustees as well as individually, and the Court so finds. The plaintiff is seeking to hold the defendants as trustees of the City and Suburban Land Trust only.

In making the findings in this case the Court has not taken into consideration any of the so-called self-serving letters written by Mr. Peter C. Cannon except insofar as they serve to fix dates or show that demands were made for payment.

The various letters written by Mary T. Cass, or by her counsel, in respect to payments made or to be made are taken only as bearing on the liability of Mary T. Cass, and not binding Annie M. Autran.

The defendant Cass raises the further point that insofar as the City and Suburban Land Trust is concerned it is not bound by the agreement of its two trustees, Cass and Autran, for the reason that all the trustees did not enter into the agreement.

As has been before stated, in May and June, 1923, Mary T. Cass and Annie M. Autran and Martin V. Cass were trustees of the City and Suburban Land Trust. Mary T. Cass was president and Annie M. Autran was treasurer and secretary, and these two trustees were beneficially interested in the trust and controlled it.

The evidence further shows that a part of the payments made to the plaintiff over a period of a year and a half were made from the City and Suburban Land Trust. It has had the benefits arising from the action of the plaintiff in not prosecuting the suit in equity pending in 1923.

The evidence justifies a finding that the trust has had the benefit of the agreement entered into by its two trustees Autran and Cass, and that there has been acquiescence on the part of the third trustee, Martin V. Cass, and that therefore the point that the third trustee did not enter into the agreement is not well taken.

*Rand* vs. *Farquhar*, 226 Mass. 91;

*The Phila. Trust Co.* vs. *Phila. & R. C. I. Co.*, 139 Pa. St. 534;

*Vohman* vs. *Michel*, 185 N. Y. 420.

The defendant Cass also takes the point that Martin V. Cass is not made a party to the instant case as a trustee. If so such nonjoinder has been waived.

*The Sanderson Fertilizer & Ch. Co.* vs. *Tatlas*, 103 Atl. 780 (R. I.);

*Panagos* vs. *Plack*, 277 Pa. 431.

The defendant Cass further argues that the agreement on the part of Mary T. Cass was as surety for Annie M. Autran and is within the provisions of the Statute of Frauds.

Under the findings in this case made and under the decision of the Supreme Court in

*Autran* vs. *Cass*, 51 R. I. 198,

this point must be overruled.

The evidence shows that the defendants agreed to pay in the manner found above the sum of $6,757.55. There is a credit of $910.00, making a principal sum of $5,847.55. Computing interest at six per cent. on the several installments from the due dates thereof to July 11, 1931, and on the claim of Dr. Keefe and the undertaker's bill from July 2, 1925, the date of the plaintiff's writ, to the same date, there is due and owing under the contract, by reason of the breach thereof, $8,138.00.

Decision for the plaintiff as administratrix of the estate of John F. Autran for $8,138.00 against Annie M. Autran and Mary T. Cass, individually

and as trustees of the City and Suburban Land Trust.

For plaintiff: O'Shaunessy & Cannon.

For defendant: James H. Rickard.