JOHN A. McDURFEE ET AL. *v.* ALBERT E. BUCK.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed October 2, 1934.

*Herbert G. Barber* and *Bert L. Stafford* for the defendant.

*Lindley S. Squires* for the plaintiffs.

POWERS, C. J. The plaintiffs are father and son. John, the father, owned a farm in Sandgate. Robert, the son, owned a lot in that town and the cutting rights on the "Woodcock farm," so-called, also in Sandgate. It was the claim of the plaintiffs that the defendant bought of them the standing timber on all of the lands referred to, and contracted with them to cut and saw the logs therefrom. The action is contract with the common counts as a complaint, and the answer is a general denial. A jury trial resulted in a verdict for the plaintiffs and the defendant is the excepting party.

At the close of the evidence, the defendant moved for a nonsuit and for a directed verdict. Both motions were overruled, and proper exceptions were saved. Numerous grounds were assigned in these motions, but they are fairly reducible to the two claims hereinafter discussed.

■■ 1. It is said that the interests of the plaintiffs in the subject-matter of the alleged contract being several and not joint, a joint suit cannot be sustained, since the evidence taken in the light most favorable to them did not tend to show a promise to them jointly.

There does not seem to be any question made as to the law of the subject, and there could not well be, for it was recently stated in *Shurtleff et al.* v. *Udall*, 97 Vt. 156, 161, 162, 122 Atl. 465, and comes to this: Ordinarily, where the interests are joint, the contract is joint; and where the interests are several, the contract is several. The interest referred to is interest in the contract. The contract is the vital thing, and it by no means follows in a case like this, that because the interests in the lands involved are separate, a joint recovery cannot be had. It was easily possible for the plaintiffs to "pool their interests"—to use the language of the trial court— and to treat the whole lumbering enterprise, including their personal labor therein, as of common interest, and to make joint contracts regarding it binding upon themselves and others so contracting with them. If the defendant's promise ran to them, the suit is well brought. If there was evidence fairly and reasonably tending to show such a promise, the motions were properly overruled.

336

■ It must be admitted that there is much in the transcript indicating that the defendant made not one but two or more contracts; that his engagements were not to them jointly, but to them individually. But the evidence is not all that way. While the plaintiffs' evidence sometimes speaks of the contract or some part of it as being made with one of the plaintiffs, at other times it speaks of it as being made with them jointly. Thus, John, on page 30 of the transcript, in speaking of the defendant's agreement, testified: "We were to take just barely enough to pay our expenses until these two debts were paid, and when those two debts was paid, he was to report to us every thirty days." And again on page 265, after referring to the debts, he said: "* * * and the rest was ours. After these debts was paid, these three debts I mentioned, then he was to account to us every thirty days and settle with us."

The course of the business as carried on by the plaintiffs, and in some respects as carried on by the defendant, indicates that all understood it was a single undertaking on the part of the plaintiffs, and in some measure supports their claim. This was the theory on which the trial below proceeded until the evidence closed, and until that time came no suggestion to the contrary was made. On the record before us the question under discussion was for the jury, and inasmuch as it was submitted under proper instructions, the verdict settled the matter, and this ground of exception is unavailing.

■ 2. There was an overdue mortgage on some of the land on which timber was cut, and some of the land had been quit-claimed by Robert, who held the title, to the mortgagee, though there was evidence tending to show that Robert still had a right to redeem. The defendant claims that neither plaintiff had any title to the timber cut on such lands, and so they could make no valid contract of sale of it, and could not recover on any such contract, if made. To this claim the plaintiffs replied that the mortgagee consented to the sale. There was evidence fairly and reasonably tending to establish such consent. The jury would be warranted in finding that a month or so after the contract with the defendant was made, the mortgagee sent for the plaintiff John, and inquired about the deal with the defendant. That the terms of the contract were then made known to the mortgagee, including the payment of the mortgage note out of the stumpage. That the mortgagee approved the con-

tract and advised John to go on with it. That the plaintiff Robert was present when this conversation took place, and he confirmed it on the stand. That later on, the mortgagee advised the plaintiffs to go on under the contract and assured them that he would look after their interests and that everything would be all right. And that the mortgagee actually accepted $500 of the stumpage money paid to him under the contract. It is plain that the question of the mortgagee's consent to the sale was for the jury, and the verdict settled it in the plaintiffs' favor. The exceptions based on this claim are also unavailing.

*Judgment affirmed.*